The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
May 26, 2022

## 2022COA56

**No. 19CA2359, *People v. Smith* — Attorneys and Clients — Ineffective Assistance of Counsel; Criminal Law — Postconviction Remedies — Postconviction Counsel — Waiver of Claims**

As a matter of first impression in a criminal postconviction proceeding under Crim. P. 35(c), a division of the Court of Appeals holds, consistent with *Dooly v. People*, 2013 CO 34, that postconviction counsel does not waive claims raised in a pro se defendant's postconviction motion by omitting them from a supplemental motion. Applying this holding here, the division concludes that postconviction counsel's failure to reassert the defendant's pro se claims in her supplemental motion did not waive those claims. Accordingly, the portion of the order finding a waiver is reversed and the case is remanded for the trial court to make findings on the remaining pro se claims.

COLORADO COURT OF APPEALS     **2022COA56**

---

Court of Appeals No. 19CA2359
Larimer County District Court No. 11CR1418
Honorable Gregory M. Lammons, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Anthony Robert Smith,

Defendant-Appellant.

---

JUDGMENT AFFIRMED IN PART, REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division V
Opinion by JUDGE FREYRE
Fox and Gomez, JJ., concur

Announced May 26, 2022

---

Philip J. Weiser, Attorney General, Matthew S. Holman, First Assistant
Attorney General, Denver, Colorado, for Plaintiff-Appellee

Adrienne R. Teodorovic, Alternate Defense Counsel, Denver, Colorado, for
Defendant-Appellant

¶ 1    Anthony Robert Smith appeals the postconviction court's order denying his Crim. P. 35(c) motions without a hearing.  He argues that the court erroneously found his pro se claims waived when appointed counsel omitted them from her supplemental postconviction motion.  He also asserts that his claims warranted a hearing.  As a matter of first impression, we hold that appointed counsel does not waive claims in a pro se motion by omitting them from a supplemental motion.  Therefore, we remand the case for the postconviction court to consider the issues raised in Smith's pro se Crim. P. 35(c) motion and to determine whether a hearing is warranted.  However, we discern no error in the court's ruling on Smith's supplemental motion and affirm that portion of the order.

## I.    Background

¶ 2    S.F., an eight-year-old girl, left her home with her mother amidst her parents' divorce proceedings.  They moved to Fort Collins to stay with her aunt (A.W.), her aunt's boyfriend (Smith), and her cousin (H.W.), a nine-year-old girl.  Shortly thereafter, S.F. told her mother that she had seen Smith walk around the house naked from the waist down.  She also said Smith had taken off her and H.W.'s pants and had "walked his fingers" up their legs towards

1

their private areas.  He also made them watch pornography on the internet.

¶ 3     After the police were contacted, S.F. underwent a short interview and a forensic interview.  She repeated what she had told her mother.  But in the forensic interview, she added that Smith slapped her face to make her watch the pornography.  S.F. also told the interviewer that Smith had removed her pants and underwear, rubbed his hand on the outside of her private area, and touched S.F.'s and H.W.'s breasts.

¶ 4     Police executed a search warrant at Smith's home.  They seized a video camera containing a deleted video.  The video showed S.F. and H.W. asking Smith to show them the pornography website he was watching earlier.  Smith ignored the girls for a while but eventually loaded the website on his laptop and let the girls watch.

¶ 5     The prosecution charged Smith with one count of sexual assault on a child-position of trust-pattern of sexual abuse, three counts of sexual assault on a child-position of trust, and four counts of promotion of obscenity to a minor.  A jury convicted him of all charges.  A division of this court affirmed his convictions in

*People v. Smith,* (Colo. App. No. 14CA0085, Dec. 31, 2015) (not published pursuant to C.A.R. 35(f)).

¶ 6     In 2018, Smith filed a pro se Crim. P. 35(c) motion asserting twelve claims related to ineffective assistance of counsel, newly discovered evidence, and prosecutorial misconduct.  Smith asked for court-appointed counsel and a hearing.  The postconviction court appointed counsel, who then filed a supplemental Crim. P. 35(c) motion that expanded on three of Smith's original claims and clarified that Smith challenged only the effectiveness of his prior trial counsel.[1]  The prosecution filed a response and the court issued a written order addressing and denying the claims raised in counsel's supplemental motion without a hearing.

¶ 7     In footnote one of its order, the postconviction court found the remaining issues raised in Smith's pro se petition waived because counsel had not reasserted them in the supplemental motion and the prosecution had not responded to them.  In support, it cited *People v. Breaman,* 939 P.2d 1348, 1351 (Colo. 1997)

---

[1] Smith was represented by several different attorneys throughout the trial court proceedings.

(court-appointed public defenders do not have a duty to prosecute meritless postconviction claims).

## II.    Waiver

¶ 8    Smith contends that the postconviction court erred in finding that he waived his pro se claims by not reasserting them in counsel's supplemental motion. Because the supplemental motion does not evidence an intent to waive or abandon the remaining pro se claims, we agree.

### A.    Standard of Review and Law

¶ 9    We review a postconviction court's decision to deny a Crim. P. 35(c) motion without a hearing de novo. *People v. Cali*, 2020 CO 20, ¶ 14; *People v. Castillo*, 2022 COA 20, ¶ 15.

¶ 10    When asserting the ineffective assistance of trial or appellate counsel, a defendant must show (1) "that counsel's performance was deficient" and (2) "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also People v. Valdez*, 789 P.2d 406, 410 (Colo. 1990) (the test for ineffective assistance of appellate counsel is whether counsel's performance was deficient and prejudiced the defendant). Courts must indulge a strong presumption that counsel's conduct falls

within the wide range of reasonable professional assistance and make "every effort . . . to eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689.

¶ 11 A court may deny a Crim. P. 35(c) motion without a hearing only if the motion, files, and record clearly establish that the defendant's allegations are without merit and do not warrant postconviction relief. *Ardolino v. People*, 69 P.3d 73, 77 (Colo. 2003). The motion may be denied without a hearing only if the record establishes that the defendant's allegations, even if true, would fail to establish either the deficient performance or prejudice prongs of the *Strickland* test. *Id.*

¶ 12 To establish deficient performance, a defendant must prove that counsel's representation "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. "The prejudice component requires the defendant to prove that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *People v. Garcia*, 815 P.2d 937, 941 (Colo. 1991) (quoting *Strickland*, 466 U.S. at 694).

¶ 13    As relevant here, Crim. P. 35(c)(3)(I) and (II) require a pro se defendant to initiate the postconviction review process by filing a timely and compliant pro se motion.  If a defendant requests and the court appoints counsel, then counsel may request additional time to investigate and "add any claims" counsel believes have merit.  Crim. P. 35(c)(3)(V).  While court-appointed counsel has no duty to prosecute meritless postconviction relief claims, *Breaman*, 939 P.2d at 1351, counsel may not seek dismissal of a defendant's claims against the defendant's wishes, regardless of counsel's belief in the claims' merits.  *Dooly v. People*, 2013 CO 34, ¶ 7.  Indeed, "a district court is not authorized to grant an attorney's motion to dismiss his client's application for postconviction relief without his client's informed consent."  *Id.* at ¶ 10.  Moreover, the postconviction court has an independent obligation to make findings of fact and conclusions of law regarding Crim. P. 35(c) claims, "irrespective of [an] attorney's conclusions or analysis."  *Breaman*, 939 P.2d at 1352.

¶ 14    Because a defendant's right to postconviction review is statutory, "a waiver of the right need only be voluntary."  *People v. Wiedemer*, 852 P.2d 424, 438 (Colo. 1993).  A voluntary decision is

6

one made intentionally, freely, deliberately, and without coercion. *People v. Martinez*, 70 P.3d 474, 478 (Colo. 2003); *Cardman v. People*, 2019 CO 73, ¶ 21. And, "we must indulge 'every reasonable presumption *against* waiver,'" *People v. Rediger*, 2018 CO 32, ¶ 46 (citation omitted), even for a "nonfundamental right," *Phillips v. People*, 2019 CO 72, ¶ 21.

## B.    Analysis

¶ 15    We conclude that Smith did not waive his pro se claims for two reasons. First, to the extent the postconviction court found a waiver based on counsel's failure to reassert the pro se claims in her supplemental motion, we disagree. Counsel titled her motion "Supplemental Motion For Post-Conviction Relief." The plain meaning of supplement is "to add or serve as a supplement to." Merriam-Webster Dictionary, https://perma.cc/GN3D-PF8T; *see also* Black's Law Dictionary 1395 (11th ed. 2019) ("Unlike an amended pleading, a supplemental pleading *merely adds* to the early pleading and *does not replace* it.") (emphasis added). This meaning is consistent with the plain language of Crim. P. 35(c)(3)(V), permitting court-appointed counsel to add claims to a defendant's pro se motion. Indeed, it would make little sense to

require counsel to reassert claims already made. *Cf. People v. Clark*, 2015 COA 44, ¶ 111 (increasing judicial efficiency is an important concern because doing so preserves a scarce public resource). Therefore, we conclude that court-appointed counsel is not required to reassert issues raised in a pro se motion in a supplemental motion in order to preserve them for the postconviction court's ruling and this court's review.

¶ 16    Second, the People have not identified, nor can we find, any language in the supplemental motion that purports to abandon or waive any issues raised in Smith's pro se motion. To be sure, counsel has no duty to pursue meritless claims; however, nothing in the record shows that counsel considered Smith's pro se claims to be meritless or that she sought (or received) Smith's informed consent to waive any claims. And we must indulge every presumption against waiver. *Phillips*, ¶¶ 16, 18, 22 (declining to infer waiver from counsel's behavior).

¶ 17    In *Dooly*, court-appointed counsel filed a motion to dismiss the defendant's pro se postconviction motion on the grounds that it had no merit. *Dooly*, ¶ 1. The district court granted counsel's motion, and a division of this court affirmed. *Id.* On review, our supreme

8

court discussed the decisions counsel and the defendant may make, recognizing that trial counsel is generally accepted as the "captain of the ship" and that appellate counsel may decide which issues to pursue on appeal. *Id.* at ¶ 7. But in the postconviction context, the court found that "[t]o permit the denial of postconviction relief for lack of merit under the guise of granting [counsel's] motion to dismiss his client's application would be little different from permitting the appointment of counsel to 'serve as the court's fact-finder,' precisely the procedure we rejected in *Breaman*." *Id.* at ¶ 10. And it held that neither counsel nor the postconviction court may dismiss a defendant's claims without informed consent. *Id.*

¶ 18    Applying *Dooly*'s holding here, we conclude that footnote one is analogous to a postconviction court's dismissal of a defendant's claims and that it fails to satisfy a postconviction court's independent obligation to make findings of fact and conclusions of law for each claim raised. *See Breaman*, 939 P.2d at 1352. Absent evidence of Smith's intent to waive his pro se claims, we reverse the portion of the postconviction court's order finding a waiver and

remand this case to the postconviction court for an independent evaluation of Smith's pro se claims.[2]

### III.    Remaining Claims

¶ 19    Smith next contends that the postconviction court erroneously denied two of his claims without a hearing.[3]  He argues that trial counsel was ineffective in failing to make a record of the trial court's ex parte communications with the jury and in failing to consult an independent expert to assist in preparing for cross-examination of the prosecution's generalized expert witness.  We address and reject each contention.

### A.    Ex Parte Communication

¶ 20    Once the jury began deliberating, the trial court explained to the parties that it would ask the clerk to speak with the jury around 5 p.m. to see whether it was close to reaching a verdict.  Assuming the jury was not close to a verdict, the court said it saw no reason to keep the jury late.  The court told counsel that it would need to admonish the jury, and that it could do so either off the record

---

[2] We express no opinion on the merits of Smith's pro se claims.
[3] Because Smith does not appeal the court's ruling on his failure to investigate a witness or cumulative error, we deem them abandoned.  *See People v. Liggett*, 2021 COA 51, ¶ 53.

without counsel present or in the courtroom with counsel present. Defense counsel stated that she did not have a problem with the court admonishing the jurors off the record.

¶ 21 During deliberations, the jury asked two questions. And at 6:04 p.m., the jury asked to view a video. After a brief discussion with both counsel, the court offered to personally deliver a written response to the jury. Defense counsel objected and said the court should not speak with the jury without counsel present, but she agreed the bailiff could deliver the response. Instead, the court brought the jury into the courtroom to ascertain the status of deliberations, and defense counsel expressed her concern about the jurors feeling rushed. The court gave the following instructions:

> THE COURT: I've received your question. I have an answer to your question; however, I'm afraid we cannot wait longer, and I don't want -- and I know you all wanted to reach a verdict tonight, but bottom line is we can't stay. And I -- *it would be inappropriate to say you've got five minutes, because you'd be rushed. And I want -- I think, all the parties want you to take as much time as you need to reach a verdict.*
> So I'm sorry to say you're going to have to come back Monday morning, but -- you're going to have to come back Monday morning. And so as you go home over the weekend, all the same reminders: don't talk to anybody, don't talk to each other.

11

And this becomes important at this stage, because once you've started deliberating, it's easy to talk to each other. Don't do that. You can only talk when you're all together in the jury room.

Of course, again, don't do any investigation and don't do any research. And what I will do, I have other things scheduled Monday morning. I'm not going to visit with you. I'm going to instruct you that whenever you get here, you can begin deliberating.

I would -- as you go back into the jury room, you can -- I would say you can start at 8:30 or 9:00. I wouldn't encourage any later than that. I don't know if you can reach an immediate consensus, but I'd say 8:30 or 9:00, and then we'll go through, *take as long as you need to finish reaching your verdict*, and we'll go through the procedure Monday morning that we went through this afternoon.

(Emphasis added.)

¶ 22    On direct appeal, Smith raised the ex parte communication issue, and a division of this court held that counsel's affirmative acquiescence invited any error and that Smith had waived the right to object. *Smith*, No. 14CA0085, slip op. at 6-7.

¶ 23    The postconviction court denied Smith's claim and found that, even assuming counsel's deficient performance, he had not shown what post-verdict conversations with the jurors would have revealed and, thus, he failed to establish prejudice.

¶ 24    We discern no error in the court's ruling for four reasons. First, we are not convinced that any ex parte communications occurred. The record before us reveals that the court intended to have the clerk speak with the jury at the end of the day, and it gave counsel the choice of being present or absent when it admonished and released the jury. It further shows that the jury asked two questions and deliberated well beyond 5 p.m., but it does not reveal any ex parte communications during this time. And when counsel objected to the court personally delivering any messages to the jury concerning its request to view the video, the court brought the jury into the courtroom and released it in counsel's presence.

¶ 25    Second, while Smith argues that juror affidavits "would have assisted in resolving this issue," he does not explain how they would have assisted or what they would have said. Indeed, postconviction counsel made no efforts to obtain the jurors' contact information to learn what their affidavits might have revealed. *See People v. Simpson,* 69 P.3d 79, 80-81 (Colo. 2003) (defendant has the burden of providing sufficient facts to warrant a hearing). Moreover, given the constrictions of CRE 606(b), Smith has not established how he would have obtained this information.

¶ 26 Third, we are not persuaded that the court's alleged ex parte communications constituted a persistent reminder to the jury that they needed to reach a decision and may have led it to feel rushed, thereby undermining confidence in the verdict, because the record does not support this argument. Instead, the record shows that the court twice instructed the jurors to take as much time as they needed to reach a verdict, and, absent contrary evidence, we presume the jurors followed the court's instructions. *See People v. Salas*, 2017 COA 63, ¶ 14. Moreover, in light of the overwhelming evidence presented in this case, including the video, even assuming deficient performance, we discern no prejudice. *See Dunlap v. People*, 173 P.3d 1054, 1068 (Colo. 2007) (prejudice prong of the *Strickland* analysis not established where there is overwhelming evidence of defendant's guilt).

¶ 27 Fourth, we reject Smith's claim that if the error had been properly preserved, his conviction would have been reversed on direct appeal. While we agree that preserved ex parte communications are typically reviewed for harmless error, they are not entitled to automatic reversal. *Key v. People*, 865 P.2d 822, 826 (Colo. 1994). And even assuming an erroneous ex parte

communication occurred, the postconviction court noted, and we agree, that the error would likely have been found harmless in light of the trial court's instruction to the jurors to take their time reaching a verdict. *Cf. People v. Urrutia*, 893 P.2d 1338,1342-43 (Colo. App. 1994) (finding harmless error when the trial court did not indicate that jurors were under any time limit to reach a consensus or declare a deadlock); *People v. Fell*, 832 P.2d 1015, 1020 (Colo. App. 1991) (telling a prospective juror that they "will be out of here" in approximately two and one-half days was not coercive); *Allen v. People*, 660 P.2d 896, 898 (Colo. 1983) (instruction that jury only had another fifteen minutes to deliberate before a mistrial was declared was coercive).

¶ 28    Therefore, we discern no error in the postconviction court's denial of this claim without a hearing. *See Ardolino*, 69 P.3d at 77.

### B.    Expert Consultation

¶ 29    The prosecutor endorsed and presented generalized expert testimony on child sexual abuse.[4]  Smith contends trial counsel

---

[4] Generalized experts provide general context to educate the jury in complex cases and often know little or nothing about the case facts, have never met the victim, and have not performed any case-related analyses or examinations. *People v. Cooper*, 2021 CO 69, ¶¶ 49-53.

should have consulted an independent expert to assist her in cross-examining the prosecution's expert. We disagree for two reasons.

¶ 30   First, whether to consult or retain an expert is a matter of strategy. *Davis v. People*, 871 P.2d 769, 773 (Colo. 1994) (the decision to interview or call a particular witness, if made in the exercise of reasonable professional judgment, is a tactical decision that does not amount to ineffective assistance); *People v. Newmiller*, 2014 COA 84, ¶ 48 (Where defense counsel's decision not to call an expert to testify "was strategic and adequately informed," defendant could not overcome "the 'virtually unchallengeable' presumption that counsel's decision was objectively reasonable.") (citation omitted); *People v. Aguilar*, 2012 COA 181, ¶ 12 (Defense counsel's decision not to hire an expert "was a matter of trial strategy" that fell within "the wide range of professionally competent assistance"; further, "[d]efendant's assertion that an expert could have contradicted the prosecution's evidence was facially speculative."); *People v. Bradley*, 25 P.3d 1271, 1276 (Colo. App. 2001) ("[T]he tactical decision not to call . . . an expert witness was within the discretion of trial counsel and does not support defendant's claim of

16

ineffective assistance of counsel."). The record reveals that, initially, Smith's counsel sought state funds to finance the cost of an expert. But approximately two weeks later, counsel withdrew her motion and said, "[u]pon further review of the case, the undersigned has determined that an expert witness for the defense will not be necessary." Thus, the record shows that counsel informed herself of the facts of the case and made a tactical decision not to use an expert's assistance to prepare for cross-examination.

¶ 31 Second, decisions concerning whether and how to conduct cross-examination are strategic ones committed to counsel's discretion. *See Arko v. People*, 183 P.3d 555, 558 (Colo. 2008) (decision to conduct cross-examination is a strategic decision by counsel). And when evaluating counsel's decisions, we must forgo the use of hindsight, and give counsel's actions a strong presumption of falling within the wide range of reasonable professional conduct. *Strickland*, 466 U.S. at 689.

¶ 32 Trial counsel's cross-examination challenged the expert's veracity by revealing her limited experience in dealing with nonabused children, her admission to relying on studies with

17

flawed methodologies, her concession that almost any child behaviors can be consistent with sexual abuse, and the use of effective hypotheticals. Smith does not explain what additional information that a jury would have found persuasive could have been gleaned from consulting an independent expert. And "[m]ere disagreement as to trial strategy will not support a claim for ineffective assistance of counsel." *Bradley*, 25 P.3d at 1275. Given the overwhelming evidence presented at trial, we conclude that the outcome likely would not have changed. *See Dunlap*, 173 P.3d at 1068.

¶ 33 Accordingly, we discern no error in the postconviction court's decision to deny this claim without a hearing. *See Ardolino*, 69 P.3d at 77.

IV. Conclusion

¶ 34 The order is affirmed in part and reversed in part and the case is remanded for the postconviction court to make further findings on the claims raised in the pro se motion.

JUDGE FOX and JUDGE GOMEZ concur.