**The PEOPLE of the State of Colorado,**
**Plaintiff–Appellee,**

v.

**Gary Lee DAVIS a/k/a Gary Lee**
**Gehrer, Defendant–Appellant.**

No. 91CA0586.

Colorado Court of Appeals,
Div. II.

Sept. 24, 1992.

Rehearing Denied Oct. 29, 1992.

Certiorari Granted March 29, 1993.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Robert Mark Russel, First Asst. Atty. Gen., Robert M. Petrusak, Asst. Atty. Gen., Denver, Steven Bernard, Sp. Asst. Atty. Gen., Brighton, for plaintiff-appellee.

Dennis W. Hartley, P.C., Dennis W. Hartley, Lari J. Trogani, Colorado Springs, for defendant-appellant.

Opinion by Judge PLANK.

Defendant, Gary Lee Davis, appeals the order of the trial court denying his motion for post-conviction relief under Crim.P. 35(c) in which he alleged ineffective assistance of counsel. Defendant further appeals the trial court's denial of his motion for a continuance to obtain additional evidence for his post-conviction relief hearing. We affirm.

Defendant was prosecuted based on evidence that he and his wife had kidnapped, sexually assaulted, and then killed a woman. A jury found the defendant guilty of murder in the first degree, felony murder, conspiracy to commit murder in the first degree, second degree kidnapping, and conspiracy to commit second degree kidnapping. The jury returned a death penalty verdict pursuant to the convictions, and that verdict was affirmed on appeal. *Peo-*

*ple v. Davis,* 794 P.2d 159 (Colo.1990), *cert. denied,* 498 U.S. 1018, 111 S.Ct. 662, 112 L.Ed.2d 656 (1991).

Defendant murdered the victim with the assistance of his now-divorced wife, Rebecca Fincham. Fincham received a life sentence for her role in the killing. *People v. Fincham,* 799 P.2d 419 (Colo.App.1990).

The evidence presented in *People v. Davis, supra,* demonstrated that the following events led to the charges here at issue.

Defendant and Fincham planned to kidnap a woman in order to satisfy their sexual desires. After an unsuccessful attempt to abduct a woman and the failure of a scheme in which Fincham sought to arrange that she and Davis would gain entry to the home of an acquaintance of hers while the woman was there alone, Fincham contacted the victim, also an acquaintance.

Fincham offered to bring the victim some children's clothing. The victim accepted the couple's apparent generosity, and, accompanied by her four-year-old daughter, greeted them as they drove up to her home. Fincham lured the victim toward a tool shed where defendant punched her in the face and forced her into the couple's car.

Fincham drove the car to a secluded area while the defendant held the victim in the back seat. The defendant sexually assaulted the victim and subsequently forced her to engage in sexual relations with Fincham.

The victim pleaded for her life and offered her assailants $1000 for her release. The defendant ignored her plea and struck her on the head with the rifle butt. The blow fractured the victim's skull and caused hemorrhaging; however, it apparently did not render her unconscious. Defendant then emptied his rifle into the victim's face and torso, including her breasts and pubic region, with a barrage of some fourteen hollow point bullets which exploded on impact. The defendant and Fincham then covered the corpse with a bale of hay and left.

The victim was soon reported missing, and the deputy who took the initial report began to patrol the area. He stopped a car occupied by Davis and Fincham and inquired about the whereabouts of the victim. The couple denied having seen her, and having no reason to hold them, he allowed them to leave. The officer specifically noted that there were no signs that the couple was under the influence of alcohol. Subsequent investigation lead to the couple's arrest the following morning.

After that affirmance, defendant filed a motion for post-conviction relief under Crim.P. 35(c), and a stay of execution was granted by the trial court.

A hearing on the post-conviction relief motion was set for February 4, 1991. The defendant requested a continuance of the hearing, asking for more time to prepare. The trial court granted the continuance and the hearing was reset for February 19, 1991.

Shortly before the new hearing date, defendant filed for another continuance asserting that he needed an additional sixty days to prepare. After a hearing on that request, the trial court denied the motion, but it allowed the defendant an opportunity to present an offer of proof that would justify the taking of additional evidence within sixty days of the hearing.

After the February 19, 1991, hearing, the trial court found the defendant's arguments on his ineffective assistance of counsel unconvincing and denied his motion for post-conviction relief. The defendant then filed a notice of appeal to this court and a verified motion to reopen evidence in the trial court. In response, the People filed a motion for a limited remand on the motion to reopen evidence which this court granted. Based on the defendant's offer of proof, the trial court found no new evidence and denied the motion to reopen.

I.

Defendant first contends that the trial court erred in concluding that the representation he had received was not a violation of his constitutional right to effective assistance of counsel. We disagree.

The right to counsel guaranteed by the Sixth Amendment and Colo. Const. art. II,

§ 16, entitles a defendant in a criminal proceeding to the reasonably effective assistance of an attorney acting as his diligent and conscientious advocate. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *People v. Tackett*, 742 P.2d 957 (Colo.App.1987).

■ The standard of reasonableness is an objective one measured by prevailing professional norms, and the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. *Strickland v. Washington, supra.*

■ In a Crim.P. 35(c) proceeding, the burden rests on the defendant to show not only that counsel's performance was deficient, but that it also prejudiced his defense. *Strickland v. Washington, supra; People v. Tackett, supra.*

In assessing a claim of ineffective assistance, a reviewing court should focus on two issues. First, it must determine whether the defendant has established that particular acts or omissions of his counsel fell outside the wide range of "reasonably competent assistance demanded of attorneys practicing criminal law." *Strickland v. Washington, supra; People v. Dillon*, 739 P.2d 919 (Colo.App.1987). However, while so doing, the reviewing court:

> [m]ust indulge a strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that under the circumstances, the challenged action 'might be considered sound trial strategy.' [*Michel v. Louisiana*, 350 U.S. 91, 76 S.Ct. 158, 100 L.Ed. 83 (1955)].

*Strickland v. Washington, supra.*

■ Second, the reviewing court must ascertain whether the accused has demonstrated in a tangible manner that the acts or omissions of his counsel prejudiced him. To show such prejudice, defendant must demonstrate that under the totality of circumstances there is a reasonable probability that, but for counsel's deficient perfor-

mance, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *Strickland, supra; People v. Tackett, supra.*

### A.

Defendant asserts that his counsel's decision not to investigate and present limited, mitigating evidence during the penalty phase of his trial was based upon an uninformed opinion that was outside the range of professionally reasonable judgment. We reject this contention.

After discussions with defendant, defendant's counsel, an experienced criminal attorney, devised a strategy to present evidence that Fincham was equally if not more culpable than defendant in the commission of the crime. Because the wife had received a life sentence instead of the death penalty, defendant's counsel believed he could save defendant's life based on such a theory.

Defense presented this theory in his opening argument at trial; however, during the guilt phase, against his counsel's advice, defendant changed his mind and testified before the jury and accepted full responsibility for the crime. Accordingly, counsel could no longer reasonably pursue his theory of lesser culpability.

Defendant's allegations focus on his counsel's ineffective representation during the penalty phase of trial. In particular, the defendant alleges that: 1) an inadequate social history was taken from the defendant; 2) no specific efforts were made to locate friends, family, ex-counselors, and ex-employers to testify on behalf of the defendant; 3) alcoholism was not explored adequately as a mitigating factor; and 4) there was an insufficient investigation as to the effect of a closed-head injury sustained by defendant in 1965.

■ As to his allegations that an insufficient social and psychiatric history was taken by his counsel, the defendant presented expert testimony that his counsel's performance was below professional standards

because he failed to do a thorough investigation into defendant's social and psychological history. The trial court, however, found that defendant's counsel did sufficient investigation into the defendant's family and relevant medical records to make an informed tactical decision not to use the evidence. It further determined that counsel decided not to use such evidence because of its potential detrimental effect. We perceive no error in that finding.

■ A defendant is entitled to a pretrial investigation of sufficient thoroughness to develop potential defenses and uncover facts relevant to guilt and punishment. *Strickland v. Washington, supra; People v. Tackett, supra.* And, an attorney has a duty to conduct a reasonable investigation, including an investigation of the defendant's background, for possible mitigating evidence. *Middleton v. Dugger,* 849 F.2d 491 (11th Cir.1988).

■ However, mere disagreement as to trial strategy will not support a claim of ineffective assistance. *People v. Tackett, supra.* In *Strickland v. Washington, supra,* the court stated:

> [S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigation or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

A decision not to present evidence of character or evidence of mental or emotional problems may constitute a reasonable strategic choice well within the realm of reasonable professional judgment. If counsel is confronted with overwhelming aggravating circumstances, he may reasonably conclude that such character and psychological evidence would be of little help. *See Strickland v. Washington, supra.* This is particularly true if such evidence of character or psychological or emotional backgrounds would open the door to presentation of potentially damaging evidence by the prosecution. *Darden v. Wainwright,* 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986); *Burger v. Kemp,* 483 U.S. 776, 107 S.Ct. 3114, 97 L.Ed.2d 638 (1987).

The record supports the trial court findings that defendant's counsel made an informed tactical decision not to present such evidence based on its potentially damaging nature. After careful review, we are satisfied with this finding.

**B.**

■ Defendant next contends that ineffective assistance is revealed by the fact that his trial counsel failed to contact, or consider the use of, certain friends and family members, ex-employers, and ex-counselors as character witnesses for defendant. Again, we find no deficiencies in counsel's performance.

The record shows that defendant's counsel did consider areas of mitigation such as sympathy-evoking testimony from family members, friends, and neighbors. But, in doing so, counsel was exposed to a number of unfavorable potential witnesses who likely would have been called by the prosecution to counter any favorable character testimony.

For example, counsel learned that after defendant's previous conviction for first degree sexual assault of a 15–year–old girl, his mother had regarded him as an embarrassment to the family who was no longer welcome in her home. Similarly, one of defendant's former wives indicated that she had been abused by defendant and that he had held a gun to her head during some apparent differences over sexual matters. Lastly, defendant's counsel received reports from the public defender's office concerning interviews with a brother, as well as two tenants in an apartment complex

the defendant had once managed. In both situations, the reports were unfavorable to the defendant's character.

Although defendant's counsel decided not to have certain witnesses testify concerning defendant's character, he did produce two other witnesses to testify that defendant was remorseful, redeemable, and that it was not necessary to execute defendant to protect society. Also, he questioned these witnesses in a manner which did not open the door to questions on cross-examination into unfavorable areas of defendant's character.

At the Crim.P. 35(c) hearing, defendant's counsel also testified that producing other character evidence would have undermined his equitable argument that Fincham's culpability was at least equal to that of the defendant and that she was the dominant figure in directing the murder of the victim.

We agree with the trial court's determination that counsel's actions were not prejudicial based on a "thorough investigation" of the case and tactical decisions made by counsel.

Failure to present mitigating evidence at a capital sentencing hearing is not always defective performance. *Deutscher v. Whitley*, 884 F.2d 1152 (9th Cir.1989), *vacated, other reasons,* — U.S. ——, 111 S.Ct. 1678, 114 L.Ed.2d 73 (1991). When overwhelming evidence of guilt and aggravating factors exist, testimony that the defendant is a "good" person is unlikely to alter the outcome. *Coleman v. Brown,* 802 F.2d 1227 (10th Cir.1986) *cert. denied,* 482 U.S. 909, 107 S.Ct. 2491, 96 L.Ed.2d 383 (1987).

We are unpersuaded that the additional character witnesses would have been sufficient to change the outcome. It was reasonable for defendant's counsel to conclude that the risk of potentially damaging character testimony outweighed the benefit of presenting evidence that defendant displays likeable characteristics to certain friends and family members. Thus, the trial court's determination that defendant's counsel was not ineffective in this regard will not be disturbed.

## C.

■ Next, defendant challenges the failure of his counsel to explore and present defendant's alcoholism as a mitigating factor. Again, we agree with the trial court that defense counsel acted appropriately as to this issue.

Evidence was presented at the hearing that trial counsel was aware of, and had records about, defendant's prior treatment for alcoholism. Furthermore, counsel had a psychiatrist examine the defendant to analyze the possible use of alcoholism as a mitigator, but he testified at the hearing that he had specifically decided not to use alcohol as a mitigator for two reasons.

First, as an experienced criminal defense attorney, he had found that alcoholism is seldom an effective defense and that a reliance on intoxication would only have lessened defendant's credibility. His other reason was that the sheriff's deputy, who had contacted defendant shortly after the victim's disappearance, did not perceive any evidence of intoxication. Also, there was no blood test or other chemical test indicative of intoxication.

The record provides sufficient evidence to support the trial court's conclusion that defendant's counsel had adequately explored the possibility of using alcoholism and made a reasonable tactical decision not to use it.

## D.

■ Defendant next argues that there was insufficient investigation into a head injury defendant received in an automobile accident in 1965. He argues that a mild concussion, not requiring hospitalization, had caused his drinking problem to escalate and could have resulted in organic brain disease. However, defendant's counsel testified he was not told of the head injury by the defendant, and the trial court found no physical evidence of organic brain disease, nor any other evidence to support the defendant's theory that his prior brain injury would have been an effective mitigating factor. Accordingly, there is no basis for a

finding of ineffective assistance in this regard.

## II.

 Besides the above allegations concerning the evidence presented in the penalty phase of the trial, defendant also contends that his counsel was ineffective because he abandoned defendant by giving no closing argument at the end of the guilt phase and separated himself from defendant during closing argument at the end of the penalty phase. We disagree.

Defendant asserts his trial counsel's actions resulted in aiding the prosecution. In particular, defendant argues that his counsel separated himself from defendant by conveying to the jury that he had reluctantly represented a defendant whom he not only "hated" but who had committed a reprehensible crime, thus dehumanizing him. In other words, defendant argues that his counsel turned against him and that such a conflict in loyalty unquestionably affected his representation.

Defendant relies on *King v. Strickland,* 714 F.2d 1481 (11th Cir.1983), in which the court found defendant's counsel did not merely neglect to present available mitigating evidence, but also made a closing argument that may have done more harm than good. In *King,* the court determined that:

> Counsel's arguments at the sentencing hearing stressed the brutality of the crimes and the difficulty his client had presented to him.... Counsel described the crimes as horrendous [and] analogized his client and the co-defendants to 'sharks feeding in the ocean in a frenzy; something that's just animal in all aspects.'

The court in *King,* thus, described counsel's failure to fulfill his duty of loyalty to his client as being most striking during the sentencing trial. A similar situation was present in *Osborn v. Shillinger,* 861 F.2d 612, 629 (10th Cir.1988). However, such is not the case here.

In *People v. Wade,* 44 Cal.3d 975, 244 Cal.Rptr. 905, 750 P.2d 794 (1988), *cert. denied,* 488 U.S. 900, 109 S.Ct. 248, 102 L.Ed.2d 237 (1988), the court stated, in words apropos here:

> In light of the overwhelming evidence of his client's guilt, trial counsel had little choice but to candidly acknowledge guilt, concede the heinous nature of the offense, and concentrate instead on [tactics and theory].... [I]t is entirely understandable that trial counsel, given the weight of incriminating evidence, made no sweeping declarations of his client's innocence but instead adopted a more realistic approach.... [G]ood trial tactics demanded complete candor with the jury.... Under the circumstances we cannot equate such candor with incompetence.

The record indicates, upon a full reading of counsel's closing argument, that while he conceded to the gruesomeness of the crime and his distaste for his client, he was making a concerted effort to maintain his candor and credibility with the jury. Mere admissions that were already obvious to the jury could not outweigh the tactical choice defendant's counsel was making during his closing argument. Hence, again, counsel's representation was not below constitutional standards.

## III.

Lastly, defendant contends that his trial counsel failed to address or object to several issues including faulty instructions, proportionality of the sentence imposed, jury selection, and the doubling of aggravating factors in the penalty phase. We find no merit in this contention.

 The record shows defendant's counsel made numerous objections and acted properly in addressing various issues of law. In particular, the trial court made a specific finding that the decision by counsel not to attack the prior convictions of the defendant was based upon his tactical decision to argue before the jury that defendant could receive two life sentences and that, thus, society would be protected even if defendant was not put to death. The court further found that although this tactic did not work, it was based upon sound logic. We, like the trial court, find no error

in counsel's conduct. *See People v. Davis, supra.*

As to the issues of faulty instructions, proportionality of the sentence, doubling of aggravating factors, and jury selection, the Colorado Supreme Court has addressed each one and found there was no reversible error. *People v. Davis, supra.*

In summary, we find substantial support in the record for the trial court's conclusion that the representation defendant received did not fall below the standard of reasonably competent assistance and that the defendant was not prejudiced by that representation. Hence, that conclusion will not be disturbed.

## IV.

The defendant next contends that the trial court erred in denying his motion for a continuance and refusal to reopen evidence. We disagree.

The granting or denying of a motion for continuance lies within the sound discretion of the trial court, and a conviction will not be overturned on appeal unless an analysis of the totality of the circumstances shows the trial court's denial of the continuance to be an abuse of discretion. *Miller v. People,* 178 Colo. 397, 497 P.2d 992 (1972).

Abuse of discretion occurs only when, under the circumstances, a ruling is manifestly arbitrary, unreasonable, or unfair. *People v. Crow,* 789 P.2d 1104 (Colo.1990).

Here, although the trial court denied the defendant's motion for a continuance, it gave him the opportunity to present an offer of proof of additional evidence within sixty days of the hearing. When the defendant filed his motion to reopen evidence, it was accompanied by one affidavit from the expert who testified at trial. The affidavit expounded on the issues that the expert testified at the hearing, but no new witnesses were presented.

Under these circumstances, the trial court gave the defendant a reasonable option, and its denial of the motion to reopen evidence is supported by the record. Thus, we find no abuse of discretion.

Accordingly, both the order denying post-conviction relief and the order denying a continuance are affirmed.

SMITH, J., concurs.

TURSI, J., dissents.

Judge TURSI dissenting.

I respectfully dissent.

In the direct appeal of this matter, *People v. Davis,* 794 P.2d 159 (Colo.1990), *cert. denied,* 498 U.S. 1018, 111 S.Ct. 662, 112 L.Ed.2d 656 (1991), a four to three majority sustained the sentence. The question of ineffective assistance of counsel was not before the court. Further, the decision to affirm relied in substantial measure upon the failure of counsel properly to preserve error in the lower trial court. Thus, the claimed errors were reviewed under the plain error standard and, as noted by the dissent, even though no one of the numerous irregularities in and of itself may have justified reversal, nevertheless, in the aggregate the errors so affect the substantial rights of the accused as to require reversal. Additionally, and essential to this appeal is the failure of trial counsel to investigate, discover, and present mitigating factors of substantial import which were not before the supreme court on the direct appeal.

The validity of a convicted defendant's claim that counsel's assistance was so defective as to require the setting aside of a death sentence is measured by a two-prong test. First, it must be determined whether counsel's performance was deficient and, second, whether the deficient performance was so prejudicial that it deprived defendant of a fair trial. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

However, "although those principles should guide the process of decision, the ultimate focus of inquiry must be on the fundamental fairness of the proceedings whose result is being challenged. In every case the court should be concerned with whether, despite the strong presumption of reliability, the result of the particular pro-

ceedings is unreliable because of a breakdown in the adversarial process that our system counts on to produce such results." *Strickland v. Washington, supra.*

A death sentence is qualitatively different from any other sentence. "Death, in its finality, differs more from life imprisonment than a one hundred year prison term differs from only a year or two. Because of that qualitative difference, there is a corresponding difference in the need for reliability in the determination that death is the appropriate punishment in a specific case." *Woodson v. North Carolina,* 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976). This requirement of reliability which is grounded in constitutional doctrine mandates a careful scrutiny in the review of any claim of error. *Zant v. Stephens,* 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983).

In the death penalty phase of this case, trial counsel, even though experienced in the area of death penalty cases, allowed himself to be so antagonistic to the defendant that he lost sight of his duty to make reasonable investigations or reasonable decisions that particular investigations were unnecessary. *See Strickland v. Washington, supra.* Further, because of the antagonism engendered by defendant's undermining of counsel's trial strategy, it is not seriously disputed that the proportional punishment theory, weak at best under the facts of this case, was not truly viable in the penalty phase.

Trial counsel candidly admitted at the Crim.P. 35(c) hearing that:

It is my belief under the *Strickland v. Washington* that I failed to perceive Mr. Davis' change and that I was not prepared to counter his change. Therefore, I was ineffective in presenting mitigation, the so-called standard mitigation that we have all talked about. The thrust of mitigation was equitable and when that was taken from me, I was unprepared to go forward with regular mitigation, which may have been effective in this case.

Further, trial counsel's ineffective assistance in preparation and presentation of the penalty phase was testified to by three experts in the area. Their testimony was unrebutted.

Hence, the critical question before this court is whether there is a reasonable probability that, but for the deficiency in counsel's preparation and presentation of discoverable mitigating factors, the death sentence verdict would have been different. In other words, did the breakdown in trial counsel's adversarial representation cause a loss of fundamental fairness? I conclude that it did.

The main thrust of the ineffective assistance claim here is that trial counsel failed in his duty to investigate and develop evidence tending to humanize the defendant and further failed to bring before the jury substantial mitigating factors both statutory and nonstatutory which could with reasonable probability have raised a sufficient doubt in the mind of at least one of the jurors as to the appropriateness of imposing the penalty of death. And, the *Strickland* court stated reasonable probability is not measured by whether it is more probable than not, but rather it is to be measured as "a probability sufficient to undermine confidence in the outcome."

Here, trial counsel, after being frustrated by the defendant's testimony in the guilty phase, failed to make a closing statement. Although the decision to waive final argument in the guilt phase may be a proper tactical decision if coordinated with an effective presentation of mitigation, such was not the case here. Rather, in the penalty phase, the sole evidence introduced was that there had been no reported trouble caused by defendant while a prisoner awaiting trial and testimony from the jailhouse chaplin that the death penalty was never an appropriate sentence. In my view, the value of the latter testimony argued to a death-penalty-qualified jury is, at best, speculative.

But, of more substantial concern to me is the fact that, because of trial counsel's failure to investigate adequately defendant's background, the jury was neither informed of his troubled childhood, which included probable sexual abuse by an older

sibling, nor of the fact that when he was separated from the Marines he was diagnosed as having an "emotional and unstable personality with schizoid trends" that was deemed to be permanent.

Nor did trial counsel develop defendant's history of chronic alcohol abuse. Although the decision not to use the defense of alcoholism in the guilt phase may well have been an appropriate tactical decision, I can surmise no such reason here not to at least place before the jury the serious nature of defendant's alcoholism as a disease and as a statutory mitigator in the death penalty phase.

Additionally, in the death penalty phase of the case, trial counsel failed to inform the jury of the fact that whenever defendant was placed within penitentiaries or state hospitals, he immediately became compliant, peaceful, and a non-dangerous individual. (The facts of defendant's prior criminal record had been fully developed in the guilt phase so there was little danger of opening closed doors). *Cf. Strickland v. Washington, supra* (contrary fact pattern). To disregard this factor when jurors must determine whether to impose the death penalty or to commit defendant to imprisonment appears unsustainable as a tactical decision. *See Woodson v. North Carolina, supra.*

If potentially beneficial mitigating evidence exists and counsel does not present it, then counsel precludes the jurors from considering mitigating factors. Hence, in the failure to discover and present such evidence, counsel creates the risk that the death penalty will be imposed in spite of factors that might have resulted in a less severe penalty. *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). Under *Lockett,* such a risk violates the Eighth and Fourteenth Amendments.

The scope of the presentation that counsel could have made is at least as important as that which does appear in the record. And, clearly, a defendant who introduces mitigating evidence stands a better chance of receiving a life sentence instead of death than does a defendant who does not introduce such evidence. *See* G. Goodpaster,

*The Trial for Life: Effective Assistance of Counsel in Death Penalty Cases,* 58 N.Y.U.L.Rev. 239 (May 1983), (cited by Justice O'Connor in *Washington v. Strickland, supra* ).

As noted by Professor Goodpaster, an effective counsel has a duty to bring to bear such skill and knowledge as would render the trial a reliable adversary testing process. Hence, in a capital case in which the evidence of guilt is overwhelming, the penalty phase is the only real trial the defense receives. Thus, effective assistance of counsel must be geared toward avoiding the imposition of death.

It is not my desire to measure trial counsel's representation by the wisdom of hindsight, nevertheless, here, when his failure to present mitigating evidence of substantial statutory and non-statutory nature to the jurors is considered together with his expressed disgust for his client, I cannot in good conscience reject defendant's claim of ineffective assistance of counsel.

Counsel's animosity towards Davis is illustrated well by his statement to the jury:

> There are times in this case that I hate Gary Davis, I'm going to tell you that, and I think that you know it. There are times I hate the things that he has done, and I have told him, and I tell you there is no excuse for it. There is no excuse for it whatsoever....
>
> Some of the times I hate Gary Davis because of what he has done to me.

Counsel's disdain for his client is so palpable in this statement that I cannot dismiss it as a mere tactical ploy.

Thus, reading the record here compels me to conclude that, but for the ineffective assistance of counsel at the penalty phase there is a reasonable probability that the result might have been different. Accordingly, I would reverse and remand to the trial court for further proceedings as permitted by § 16–11–103(7)(b), C.R.S. (1992 Cum.Supp.). Because the matter is not before us and has not been briefed, I render no opinion whether a reversal because of ineffective assistance of counsel pre-

cludes retrial of the penalty phase under that statute.