23CA0906 Peo v Anderson 01-09-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA0906
El Paso County District Court No. 19CR4891
Honorable Jill M. Brady, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Liam Richard Anderson,

Defendant-Appellant.

---

ORDER AFFIRMED

Division V
Opinion by JUDGE FREYRE
Schock and Sullivan, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced January 9, 2025

---

Philip J. Weiser, Attorney General, Abigail M. Armstrong, Assistant Attorney General Fellow, Denver, Colorado, for Plaintiff-Appellee

Suzan Trinh Almony, Alternate Defense Counsel, Broomfield, Colorado, for Defendant-Appellant

¶ 1 Defendant, Liam Richard Anderson, appeals the postconviction court's order denying his Crim. P. 35(c) motion for postconviction relief. We affirm.

## I.    Background

¶ 2 The prosecution charged Anderson with attempted first degree murder, attempted second degree murder, first degree burglary, second degree burglary, menacing, first degree aggravated motor vehicle theft, robbery, reckless driving, and two counts each of first degree criminal trespass, third degree assault, child abuse, and second degree assault. He was also charged with three habitual criminal counts. Anderson later pleaded guilty to attempted first degree murder, second degree burglary, first degree aggravated motor vehicle theft, and robbery. In exchange, the prosecution agreed to dismiss the remaining twelve charges, as well as the habitual criminal counts.

¶ 3 Under the plea agreement, the parties also agreed to resolve four pending probation cases, as well as two other separate cases, including a case Anderson incurred while he was on bond. The parties further stipulated to a controlling sentence of thirty-four

years in prison.  The trial court accepted the plea agreement and sentenced Anderson accordingly.

¶ 4       Anderson timely filed a Crim. P. 35(c) motion for postconviction relief.  He claimed that his counsel provided ineffective assistance by (1) failing to investigate the affirmative defense of involuntary intoxication and his mental illness in support of a not guilty by reason of insanity (NGRI) plea and (2) advising him to reject "superior plea agreement offers."  He further claimed that his due process rights were violated by the state's failure to disclose exculpatory evidence — namely, 911 calls made by the victim and police body camera (bodycam) recordings.  The postconviction court appointed counsel to represent Anderson.

¶ 5       Postconviction counsel filed a supplement to Anderson's pro se motion but did not add any new claims.  The prosecution filed a written response, postconviction counsel replied, and the postconviction court denied Anderson's Crim. P. 35(c) motion and supplement without a hearing.

## II.     Discussion

¶ 6     Anderson contends that the postconviction court erred by denying his Crim. P. 35(c) motion and supplement without a hearing.  We disagree.

### A.     Legal Principles and Standard of Review

¶ 7     In a Crim. P. 35(c) proceeding, a judgment of conviction is presumed valid, and the defendant bears the burden of establishing an entitlement to postconviction relief.  *People v. Corson*, 2016 CO 33, ¶ 25.  To obtain a hearing on his postconviction motion, the defendant must assert specific facts that, if true, would provide a basis for relief.  *White v. Denver Dist. Ct.*, 766 P.2d 632, 635 (Colo. 1988).  Thus, a postconviction court may deny a Crim. P. 35(c) motion without a hearing if (1) the allegations are merely conclusory, vague, or lacking in detail; (2) the allegations, even if true, do not warrant relief; or (3) the record refutes the claims.  *See* Crim. P. 35(c)(3)(IV); *People v. Duran*, 2015 COA 141, ¶ 9.

¶ 8     We review de novo the court's denial of a Crim. P. 35(c) motion without a hearing.  *People v. Cali*, 2020 CO 20, ¶ 14.

## B.    Ineffective Assistance of Counsel Claims

¶ 9    Defendants have a constitutional right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 684-86 (1984). To demonstrate ineffective assistance of counsel, a defendant must show that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced him. *Id.* at 687. An ineffective assistance claim fails if the defendant is unable to satisfy either the deficient performance or the prejudice prong of the *Strickland* standard. *Id.* at 697.

¶ 10    To establish deficient performance, the defendant must show that counsel's representation "fell below an objective standard of reasonableness." *Dunlap v. People*, 173 P.3d 1054, 1062 (Colo. 2007) (quoting *Strickland*, 466 U.S. at 688). When a conviction is the result of a guilty plea, prejudice is established if the defendant pleads and proves that, but for counsel's deficient performance, they "would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *see People v. Sifuentes*, 2017 COA 48M, ¶ 20. Furthermore, to establish prejudice, a defendant "must convince the court that a decision to

reject the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky,* 559 U.S. 356, 372 (2010).

### 1. Investigate Defenses

¶ 11 Anderson asserts that trial counsel was ineffective for failing to adequately investigate his involuntary intoxication and NGRI defenses. Because we conclude that Anderson has failed to adequately allege prejudice on both claims, the postconviction court properly denied them without a hearing.

¶ 12 Criminal defendants are entitled to sufficiently thorough pretrial investigations "to develop potential defenses and uncover facts relevant to guilt and punishment." *People v. Davis,* 849 P.2d 857, 861 (Colo. App. 1992), *aff'd,* 871 P.2d 769 (Colo. 1994); *see also Strickland,* 466 U.S. at 690-91 ("[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."). But even if we assume that Anderson's counsel was deficient in failing to investigate his involuntary intoxication and NGRI defenses, his motion and supplement fail to adequately allege that he would have rejected the plea deal and proceeded to trial but for counsel's alleged omissions. At most, Anderson asserts that counsel's alleged

deficiency regarding these two claims undermines the reliability of his plea and the trial court's finding that he entered the plea knowingly, intelligently, and voluntarily. But this alone is not enough to satisfy *Strickland*'s prejudice component. *See Hill*, 474 U.S. at 59-60. As noted, *Hill* holds that a defendant who pleads guilty cannot satisfy the prejudice component, and thus cannot prevail on their ineffective assistance of plea counsel claim, unless the defendant shows that, but for counsel's deficient performance, they would have rejected the plea deal and insisted on going to trial. *See id.* Anderson did not allege any facts in this regard in his motion or supplement. And to the extent he does so in his opening brief on appeal, it is too late. *See People v. Rodriguez*, 914 P.2d 230, 251 (Colo. 1996) (rejecting the defendant's "attempts to use his brief on . . . appeal to fortify a number of issues inadequately raised or supported by his [postconviction] motion"); *see also People v. Goldman*, 923 P.2d 374, 375 (Colo. App. 1996) ("Allegations not raised in a Crim. P. 35(c) motion . . . and thus not ruled on by the trial court are not properly before this court for review.").

¶ 13    Moreover, we note that the prosecution stipulated to a controlling thirty-four-year sentence and included in that sentence

four pending probation revocation cases (three of which were for felony convictions) as well as two additional separate felony cases (one that occurred while Anderson was on bond for this case). Given the habitual criminal charges Anderson faced, had he gone to trial and been convicted of the highest count, he faced a mandatory prison sentence of seventy-two years on that count alone. *See* § 18-1.3-801(1.5)(a), C.R.S. 2024. The plea agreement saved Anderson from what would have been a significantly longer prison sentence — more than double the sentence he is currently serving — and he has not alleged that there is "a reasonable probability that a defendant in his position would have insisted on trial." *Corson*, ¶¶ 42-43. Thus, given the facts of the case, we are not persuaded that — even if he had sufficiently alleged prejudice — his decision to reject the plea agreement and go to trial would have been rational under the circumstances. *Padilla*, 559 U.S. at 372. Consequently, Anderson was not entitled to an evidentiary hearing on these claims.

### 2. Plea Offer Advice

¶ 14    Next, we address Anderson's claim that trial counsel was ineffective because he failed to properly advise Anderson regarding

two earlier plea offers — specifically, an offer with a stipulated prison range of twenty to twenty-four years (and an agreement to concurrently resolve five pending cases); and a subsequent offer with a stipulated range of twenty-eight to forty years (and an agreement to concurrently resolve all of his pending cases, including a new case Anderson incurred while he was on bond).

¶ 15    To establish deficient performance in this context, a defendant must show that counsel's advice deprived him of the opportunity to make a reasonably informed decision whether to accept or reject a plea offer. *People v. Delgado*, 2019 COA 55, ¶ 17; *see Corson*, ¶ 35 (noting that the performance prong under *Strickland* "is no different in the plea setting"). However, postconviction courts may not rely on "the distorting effects of hindsight" and must evaluate the challenged conduct "from counsel's perspective at the time." *Rodriguez*, 914 P.2d at 294.

¶ 16    Anderson asserts that his attorney's advice "that he would have done better to refuse the offers" was deficient in the face of his attorney's subsequent "failure to investigate" his defenses. But Anderson has not identified any erroneous or incorrect statements of law or fact that trial counsel made to Anderson at the time he

8

advised him to reject the prior plea offers, nor has he identified how counsel's advice was somehow untrue or unreasonable at the time it was given. Therefore, because Anderson's claim requires a level of hindsight that we may not consider, his claim fails and the postconviction court properly denied it without a hearing.

### C. Failure to Disclose Exculpatory Evidence

¶ 17    Last, we address Anderson's claim that the prosecution violated his constitutional due process rights by failing to disclose material exculpatory evidence under *Brady v. Maryland*, 373 U.S. 83 (1963). Anderson's claim is based on the prosecution's failure to disclose (1) two 911 calls made by the victim "at the time of the incident" and (2) nineteen bodycam videos containing footage from "the [victim's] house at the time of the incident and the hospital in the aftermath."

¶ 18    A *Brady* claim requires the defendant to show that (1) the prosecution suppressed evidence (2) that is exculpatory or favorable to the defendant and (3) that is material to the case. *People v. Bueno*, 2018 CO 4, ¶ 29. Evidence is considered exculpatory or favorable under *Brady* if it has a tendency to decrease the likelihood of conviction or the severity of the sentence. *Id.* at ¶ 31. Evidence

is sufficiently material where "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* at 32. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

¶ 19 Anderson asserts that these recordings are exculpatory because they "call into question as reliable the accepted courtroom narrative" that he was "violent and aggressive" and help "to refute the claims represented by the state." He asserts the recordings are material because if he had been in possession of them before entering his plea, "the likelihood is that the outcome would have been different."[1] And he asserts the withholding of this evidence "negates the intelligent, knowing and willing nature" of his plea.

¶ 20 As to the bodycam videos, the postconviction court found that Anderson's assertions that the footage was exculpatory was vague and conclusory. We agree. In his pro se motion, Anderson describes the content of the bodycam footage as "images of

---

[1] The parties do not dispute that the victim's 911 calls and the bodycam videos were not disclosed to Anderson before he pleaded guilty.

10

Anderson lying on the floor, his throat flayed open, mostly motionless," as well as images of the victims, the inside of their home, and other views of the scene after the police arrived. But Anderson does not explain in his motion how this footage tends to negate his guilt as to the offenses charged against him. Instead, he only vaguely asserts that "the body-worn cameras [were] helpful for Anderson to refute the claims represented by the state" and "have the tendency to call into question as reliable the accepted courtroom narrative." These claims are bare and conclusory and the postconviction court properly denied them on this basis. *See People v. Osorio*, 170 P.3d 796, 799 (Colo. App. 2007) (concluding that a postconviction motion is properly denied when the allegations are "conclusory, vague, or lacking in detail").

¶ 21      As to the 911 calls, the postconviction court concluded that the calls were neither exculpatory nor material and "[a]t best" were impeachment evidence. We agree with the postconviction court that these allegations do not support any cognizable claims under *Brady*. In Anderson's pro se motion, he described the 911 calls as a "play-by-play" of "what is happening in real time." In his supplement, he elaborated by highlighting two inconsistencies

11

between the victim's statements made to law enforcement and the 911 calls — (1) the location of the victim when Anderson crashed into her yard; and (2) the victim's husband's statement that "he's dead" (overheard during the first 911 call) as compared to the victim's statement that Anderson was "actively fighting" (in the subsequent 911 call). Anderson asserts that these "calls were not merely impeachment" of the witness's statements but "contained exculpatory evidence as to what they claim Anderson's actions were that day — actions for which he was specifically charged criminally herein."

¶ 22    But the location of the victim when Anderson crashed onto her property does not mitigate Anderson's likelihood of guilt, nor do the victim's conflicting statements about whether Anderson was perceived to be dead or actively fighting after she fled her home. As the postconviction court noted, this evidence is at most impeaching of the victim's narrative about what happened. And the prosecution's failure to disclose impeachment evidence does not violate a defendant's due process rights under *Brady* or render a defendant's plea involuntary because defendants do not have any due process rights to non-exculpatory impeachment material.

*Corson*, ¶ 31.  Accordingly, the postconviction court properly denied this claim without a hearing as well.

### III.    Disposition

¶ 23    The order is affirmed.

JUDGE SCHOCK and JUDGE SULLIVAN concur.