23CA2189 Peo v Mitchell 10-02-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA2189
Boulder County District Court No. 17CR586
Honorable Ingrid S. Bakke, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Emily Diane Mitchell,

Defendant-Appellant.

ORDER AFFIRMED

Division V
Opinion by JUDGE YUN
Freyre and Pawar, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced October 2, 2025

Philip J. Weiser, Attorney General, Josiah Beamish, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Cynthia A. Harvey, Alternate Defense Counsel, Aurora, Colorado, for
Defendant-Appellant

¶ 1     Emily Diane Mitchell appeals the postconviction court's order denying her Crim. P. 35(c) motion without a hearing.  The postconviction court rejected her claims that plea counsel was ineffective, the prosecutor withheld exculpatory evidence, and her guilty plea was invalid.  We affirm the order.

## I.     Background

¶ 2     Mitchell and her former significant other, Leland Silver, a police officer at the time, both had protection orders that prohibited contact with each other.  Mitchell contacted the Boulder County Sheriff's Office and, in a series of reports, accused Silver of (1) sending her threatening emails; (2) calling her from a spoofed phone number; and (3) attempting to break into her house.[1]  Each of Mitchell's allegations was investigated by law enforcement.

¶ 3     As to the emails, the investigation showed that a device connected to the internet at Silver's house created a new email account and, shortly thereafter, sent Mitchell the emails.  But Silver told the investigating officer that he was in Black Hawk on the night

---

[1] Mitchell also accused Silver of sending threatening text messages, but the results of the investigation, if any, into that allegation are not in the appellate record.

the emails were sent. As proof, he produced a bank statement showing ATM withdrawals at several casinos, both before and after the emails were sent. Additionally, Silver told the officer that security cameras at his house recorded "a car turning around on his street approximately 5 minutes from when the e-mail was sent," and that he had not changed the name or password of his internet connection since Mitchell last used it.

¶ 4     Turning next to the phone call, Mitchell told the officer that she received a call from an unknown number but did not answer it. When she later returned the call, Silver answered, prompting her to immediately hang up. The investigation showed that the call originated from PrivacyShield, a phone application that enables registered users to make anonymous phone calls. The PrivacyShield account linked to the number Mitchell claimed Silver used was registered to "Emily Mitchell" using the email address "emilt[sic].mitchell@me.com." Data from Mitchell's phone indicated that the PrivacyShield application had been previously installed and that Mitchell had called the spoofed phone number on the same day the PrivacyShield account was created. No evidence of the PrivacyShield application was found on Silver's phone.

¶ 5    Finally, the officer reviewed police surveillance footage of Mitchell's house taken from the day Mitchell alleged Silver attempted to break in and "found no evidence of Leland Silver or of anyone coming to the front door of Mitchell's home or attempting to gain entry via gate into the backyard."

¶ 6    The People charged Mitchell with attempt to influence a public servant, false reporting, violations of a protection order, and violation of bail bond conditions.  In exchange for dismissal of the other charges and a stipulation that she would receive a community corrections sentence concurrent with her sentences in two other criminal cases in Adams County, Mitchell pleaded guilty to false reporting and an added count of conspiracy to commit attempt to influence a public servant.  She was sentenced to five years of community corrections.

¶ 7    Thereafter, Mitchell violated the terms of her community corrections sentences over a dozen times and was resentenced to five years in the custody of the Department of Corrections.  Mitchell filed a pro se petition for postconviction relief, the postconviction court appointed postconviction counsel for her, and postconviction counsel filed a supplement to her petition.

¶ 8    In a detailed order, the postconviction court denied the Rule 35(c) petition without a hearing.  Mitchell now appeals that order.

## II.    Analysis

¶ 9    Mitchell contends that (1) her plea counsel was ineffective for failing to adequately investigate and consult an expert about the PrivacyShield application; (2) the prosecution failed to disclose exculpatory and impeachment evidence before she pleaded guilty; and (3) her guilty plea was not made intelligently and voluntarily due to ineffective assistance of counsel and pressure to accept the plea.  We address and reject these contentions in turn.

### A.    Crim. P. 35(c) Principles and Standard of Review

¶ 10    In a Crim. P. 35(c) proceeding, a judgment of conviction is presumed valid, and the defendant bears the burden of proving an entitlement to postconviction relief.  *People v. Corson*, 2016 CO 33, ¶ 25.  To obtain a hearing on a postconviction motion, the defendant must assert specific facts that, if true, would entitle her to relief.  *White v. Denver Dist. Ct.*, 766 P.2d 632, 635 (Colo. 1988).

¶ 11    A Crim. P. 35(c) motion may be denied without a hearing when "the motion and the files and record of the case show to the satisfaction of the court that the defendant is not entitled to relief."

Crim. P. 35(c)(3)(IV). This standard is satisfied if (1) the allegations are bare and conclusory; (2) the allegations, even if true, do not warrant relief; or (3) the record directly refutes the defendant's claims. *People v. Duran*, 2025 COA 34, ¶ 15.

¶ 12     We review de novo the court's denial of a Crim. P. 35(c) motion without a hearing. *People v. Cali*, 2020 CO 20, ¶ 14.

## B.     Ineffective Assistance of Counsel

¶ 13     Mitchell contends that plea counsel was ineffective for failing to adequately investigate and retain an expert concerning the PrivacyShield application. Because we conclude that Mitchell failed to adequately allege prejudice on this claim, the postconviction court properly denied it without a hearing.

### 1.     Applicable Law

¶ 14     A defendant has a constitutional right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 684-86 (1984). This includes the right to sufficiently thorough pretrial investigations "to develop potential defenses and uncover facts relevant to guilt and punishment." *People v. Davis*, 849 P.2d 857, 861 (Colo. App. 1992), *aff'd*, 871 P.2d 769 (Colo. 1994); *see also Strickland*, 466 U.S. at 690-91 ("[C]ounsel has a duty to make

reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."). To establish ineffective assistance of counsel under the *Strickland* standard, a defendant must show that (1) counsel's performance was deficient and (2) the deficient performance prejudiced her. *Strickland*, 466 U.S. at 687. An ineffective assistance claim fails if the defendant is unable to satisfy either the deficient performance or the prejudice prong of the *Strickland* standard. *Id.* at 697.

¶ 15 To establish deficient performance, the defendant must show that counsel's representation "fell below an objective standard of reasonableness." *Dunlap v. People*, 173 P.3d 1054, 1062 (Colo. 2007) (quoting *Strickland*, 466 U.S. at 688). When a conviction is based on a guilty plea, prejudice is established if the defendant pleads and proves that, but for counsel's deficient performance, she "would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *see People v. Sifuentes*, 2017 COA 48M, ¶ 20. "This is an objective inquiry." *Corson*, ¶ 35. Accordingly, a defendant "must convince the court that a decision to reject the plea bargain would have been rational

under the circumstances." *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010).

## 2. Discussion

¶ 16 Even if we assume that Mitchell's counsel was deficient in failing to investigate or retain an expert about the PrivacyShield application, her petition and supplement failed to allege with sufficient specificity that, but for counsel's omissions, she would have rejected the plea deal and proceeded to trial.

¶ 17 Mitchell claimed that an investigation into the PrivacyShield application, including consultation with an expert, would have shown that the version of events she provided to the investigating police officer — namely, that she decided not to answer a call from an unknown phone number and that, when she later called the number back, Silver answered and she immediately hung up — accurately "reflected how the application worked."

¶ 18 But Mitchell does not allege what information the investigation or expert consultation would have revealed, or how that information could have been used to support her version of events. *See People v. Villanueva*, 2016 COA 70, ¶ 67 (A defendant "must do more than simply allege that other evidence could have aided [her]

defense; [she] must identify the evidence and demonstrate that it would have advanced [her] defense."); *People v. Zuniga*, 80 P.3d 965, 973 (Colo. App. 2003) (affirming denial of a Crim. P. 35(c) motion without a hearing where the defendant did not "explain[] what additional investigation counsel should have done, what the results of those efforts would have been, and how they would have affected the outcome of the case"). Instead, Mitchell's own postconviction expert concluded that the investigation conducted by the officer "appears to be adequate" and that Mitchell "provided what appears to be incorrect information." Thus, Mitchell has not alleged with sufficient specificity what information the investigation would have uncovered and how that information would have advanced her defense.

¶ 19     And even if an investigation could have shown that Mitchell's story to the police officer was plausible, Mitchell did not explain why that would have mattered, let alone how it would have caused her to insist on proceeding to trial. *See Hill*, 474 U.S. at 59. Mitchell did not allege that the investigation would have counteracted the evidence uncovered by the officer indicating that Mitchell actually owned the PrivacyShield phone number and

attempted to use it to frame Silver. Nor did she explain what impact, if any, the investigation would have had on the evidence suggesting that Mitchell also lied to the officer about Silver sending her threatening emails and attempting to break into her house. Put differently, Mitchell failed to provide any factual allegations demonstrating "a reasonable probability that a defendant in [her] position would have insisted on trial." *Corson*, ¶ 43. Accordingly, Mitchell's assertion that, had there been an investigation, "she likely would have received a more favorable offer, or she would not have accepted the felony plea and would have insisted on going to trial" was conclusory and did not warrant an evidentiary hearing. *See People v. Delgado*, 2019 COA 55, ¶ 8 ("[A] court may deny [a Crim. P. 35(c)] motion without a hearing . . . if the claims are bare and conclusory in nature and lack supporting factual allegations.").

¶ 20 Moreover, we note that the prosecution stipulated to a community corrections sentence that would run concurrently with a longer, controlling sentence that Mitchell had already received in another case. As a result, the plea agreement did not increase the length of Mitchell's existing sentence. In contrast, had she chosen to go to trial, she would have faced up to twelve years in prison if

9

convicted of attempt to influence a public servant. *See* §§ 18-8-306, 18-1.3-401(1)(a)(V.5)(A), (8)(a)(II), C.R.S. 2025. And the court, in its discretion, could have imposed any sentence consecutively to her existing sentence. Given the strength of the prosecution's case and the disparity in sentence exposure between accepting the plea and risking convictions at trial, we are unpersuaded that rejecting the plea agreement and proceeding to trial would have been rational under the circumstances. *Padilla*, 559 U.S. at 372; *see also Sifuentes*, ¶ 21 ("Various factors should inform a court's analysis of whether a decision to reject the guilty plea would have been rational," including "the strength of the prosecution's case" and "the attractiveness of the plea deal and the risks of going to trial."). Consequently, Mitchell was not entitled to an evidentiary hearing on her ineffective assistance of counsel claim.

### C. Failure to Disclose Exculpatory Evidence

¶ 21 Next, Mitchell contends that the prosecution violated her constitutional due process rights by failing to disclose material exculpatory evidence, as required by *Brady v. Maryland*, 373 U.S. 83 (1963). Her claim centers on the prosecution's alleged failure to disclose (1) "two USB drives includ[ing] the Aurora Police

Department case files associated with Ms. Mitchell, and . . . the forensic exams of Ms. Mitchell's iPhone and [i]Pad"; and (2) information that "Silver was pending investigation for misconduct in relation to his law enforcement duties during the pendency of this case."

¶ 22    To establish a *Brady* violation, a defendant must show that (1) the prosecution suppressed evidence (2) that is exculpatory or favorable to the defendant and (3) that is material to the case. *People v. Bueno*, 2018 CO 4, ¶ 29.  Evidence is considered exculpatory or favorable under *Brady* if it has a tendency to decrease the likelihood of conviction or the severity of the sentence. *Id.* at ¶ 31.  Evidence is sufficiently material where "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  *Id.* at ¶ 32 (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)). A reasonable probability is a probability sufficient to undermine confidence in the outcome.  *Id.*

¶ 23    Although Mitchell acknowledged that it was her burden to demonstrate that the suppressed evidence was exculpatory or favorable to her, both her Rule 35(c) petition and supplement failed

to make any allegations that the information on the USB drives could have decreased the likelihood of conviction or the severity of her sentence. *See id.* at ¶ 31. She did not discuss the evidence at all and did not make even conclusory allegations about what it might have shown or how it could have affected her case.

¶ 24 Similarly, Mitchell did not allege that the investigation into Silver's misconduct would have somehow mitigated her likelihood of guilt. Thus, we agree with the postconviction court that, "[a]t best, the evidence of Mr. Silver's disciplinary investigation would allow [Mitchell] to challenge Mr. Silver's credibility as a witness." In other words, it was nonexculpatory impeachment evidence. And the prosecution's failure to disclose impeachment evidence does not violate a defendant's due process rights under *Brady* because defendants do not have any due process rights to nonexculpatory impeachment material. *Corson*, ¶ 31 (citing *United States v. Ruiz*, 536 U.S. 622, 633 (2002)).

¶ 25 Further, Mitchell did not allege that the USB drive evidence or impeachment evidence was material. Although she asserted in a conclusory fashion that "[w]ith the non-discovered evidence in hand, . . . there exists a reasonable probability that Ms. Mitchell

12

would have decided to proceed to trial instead of enter[ing] her guilty pleas," she failed to explain why this evidence would have undermined the case against her and led her to risk a conviction with a lengthy prison sentence. *See Duran,* ¶ 9.

¶ 26    Accordingly, Mitchell failed to sufficiently allege a *Brady* violation based on the nondisclosure of the USB drives and the impeachment information about Silver, and the postconviction court correctly denied the claim without a hearing.

### D.    Validity of Guilty Plea

¶ 27    Finally, Mitchell contends that her guilty plea was invalid because it was neither intelligently nor voluntarily made. She asserts that her decision to plead guilty was (1) not intelligent due to the ineffectiveness of her plea counsel and (2) not voluntary because "she had to forgo her right to a jury trial in this case to receive her concessions, and the Community Corrections sentence in" her other criminal case.

¶ 28    We have already rejected Mitchell's claim of ineffective assistance that underlies her assertion that her plea was not intelligently made. As we explained, Mitchell did not allege what information further investigation by counsel would have yielded or

13

how it would have affected her decision to plead guilty. Because Mitchell offered no additional reasons why her decision to plead guilty was not intelligent, we reject this claim as well.

¶ 29    We turn next to Mitchell's argument that she was pressured into accepting a guilty plea to secure the benefits of a plea in a different case. Pressure alone does not invalidate a guilty plea. *See People v. McCormick*, 881 P.2d 423, 427 (Colo. App. 1994) (explaining that the "desire to accept the certainty or probability of a lesser penalty rather than face a wider range of possibilities" does not render a guilty plea invalid). Rather, a plea is invalid when it is obtained by "actual or threatened physical harm or by mental coercion overbearing the will of the defendant." *Brady v. United States*, 397 U.S. 742, 750 (1970). And Mitchell did not allege that anyone threatened her or took any action that overbore her will.

¶ 30    In the plea agreement, Mitchell affirmed that she was entering her "plea of guilty freely and voluntarily and not as a result of coercion or undue influence on the part of anyone. There have been no threats, force, or promises made to [her] to cause [her] to

enter this plea."[2] While such a representation does not foreclose a challenge to the validity of a guilty plea, *see People v. Morones-Quinonez*, 2015 COA 161, ¶¶ 15-18, it does "carry a strong presumption of verity," *People v. Canody*, 166 P.3d 218, 220 (Colo. App. 2007) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)) (concluding that the defendant's declarations "plainly refute[d] [his] conclusory allegations" that the plea was coerced). Mitchell did not make any allegations of improper coercion that would overcome her affirmations in the plea agreement.

¶ 31    Thus, Mitchell did not sufficiently allege that her guilty plea was invalid, and the postconviction court properly denied her claim without a hearing.

## III.    Disposition

¶ 32    The postconviction court's order is affirmed.

JUDGE FREYRE and JUDGE PAWAR concur.

---

[2] The transcript of the providency hearing is not included in the appellate record, so we presume that it would have supported that Mitchell's plea of guilty was voluntary. *See People v. Duran*, 2015 COA 141, ¶ 12 ("It is the appellant's responsibility to designate the record on appeal . . . . The presumption is that material portions omitted from the record would support the judgment.").