The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Tommie C. BRADLEY, Jr.,
Defendant–Appellant.

No. 99CA1787.

Colorado Court of Appeals,
Div. V.

April 26, 2001.

Ken Salazar, Attorney General, Lauren A. Edelstein–Park, Assistant Attorney General, Denver, CO, for Plaintiff–Appellee.

Law Office of Marcia E. Wade, Marcia E. Wade, Boulder, CO, for Defendant–Appellant.

Opinion by Judge ROTHENBERG.

Defendant, Tommie C. Bradley, Jr., appeals the judgment of conviction entered on a jury verdict finding him guilty of vehicular eluding; driving under suspension, revocation, or denial; driving under the influence of

alcohol; speeding; entering through highway stop or yield intersection; and compulsory insurance/operator. We affirm.

The charges against defendant arose in October 1993. Defendant proceeded *pro se* in a bench trial in 1994, and was convicted of the above charges and an additional charge of driving with excessive alcohol content.

On appeal, a division of this court concluded that defendant had not waived his right to counsel, and it reversed the conviction and remanded for a new trial. *People v. Bradley*, (Colo.App. No. 97CA1252, October 22, 1998)(not selected for official publication).

Subsequently, the People dismissed the count of driving with excessive alcohol content. Defendant retained counsel and requested a jury trial.

On the morning of trial, defense counsel alleged that the People had violated defendant's right to discovery by failing to turn over photographs of a motorcycle. There was some initial confusion regarding whether photographs had been taken, but after the prosecutor consulted with the police officer involved in the incident, the prosecutor informed the court that neither she nor the officer had knowledge of the existence of photographs. In any event, the trial court found that no discovery violation had occurred.

At trial, the officer testified that on a clear night in October 1993, he was in a marked patrol car when he heard what sounded like a motorcycle traveling at a high rate of speed. A motorcycle passed the officer and the officer followed it to ascertain its speed. The motorcycle and the officer passed a white car.

The officer testified that: (1) as the motorcycle decelerated to make a right turn, he pulled to within 30 feet and activated his red light and siren; (2) the driver of the motorcycle looked back over his left shoulder and looked at the officer; (3) the driver then accelerated up to 100 miles per hour down a residential street; (4) he then decelerated to make another turn, at which time the officer pulled to within 20 feet; (5) the driver accelerated again and ran several stop signs before crashing the motorcycle and fleeing on foot; and (6) shortly thereafter, the driver returned to the site of the crash, and the officer arrested him. The driver was later identified as defendant.

The officer testified that after defendant was advised of his *Miranda* rights, he agreed to talk to the officer, and that defendant admitted he knew his driver's license was under suspension. Defendant also told the officer that, earlier in the evening, he had put a down payment on the motorcycle and that after the officer began to follow the motorcycle, defendant's friend—who was driving the white car—signaled defendant that the officer was behind him. According to the officer, defendant admitted that he then accelerated, that he saw the officer when he (defendant) made the first turn into the residential neighborhood, and that he heard the officer's siren when he made the second turn.

The officer further testified that his patrol car was equipped with a siren, strobe headlights, a spotlight on the side of the patrol car, and flashing lights on the top which can be seen from 1000 feet away on a clear night. The siren is over 100 decibels loud and, according to the officer, it can be heard easily from 100 feet away when the patrol car is traveling at 60 miles per hour. The officer stated that during the pursuit, he had the spotlight on and was moving it around.

Against his counsel's advice and following a thorough advisement by the court, as required by *People v. Curtis*, 681 P.2d 504 (Colo.1984), defendant chose to testify in his own behalf. He admitted that he was the driver of the motorcycle, that he was speeding, that he ran several stop signs, and that earlier in the evening he had consumed "4/5" of Yukon Jack. However, he denied knowing that the officer was following him and denied making statements to the contrary following his arrest.

During opening statement and closing argument defendant's counsel argued that defendant was unaware of the patrol car behind him because: (1) the noise and speed of the motorcycle had affected his hearing; (2) he was concentrating on the road because of his consumption of alcohol; (3) he was wearing

sunglasses and it was nighttime; (4) the style of the motorcycle forced him to ride in a low position; and (5) the motorcycle had no rear-view mirrors. Defendant's counsel urged the jury to acquit defendant of vehicular eluding because he did not act knowingly. The jury found defendant guilty of all charges.

## I.

Defendant contends his due process rights and his right to a fair trial were violated when the prosecution impeached his testimony with two felony convictions that he received after the original charges were filed in this case. We disagree.

To warrant suppression of a prior conviction, the accused must make a *prima facie* showing of some constitutional violation. *People v. Lemons,* 824 P.2d 56 (Colo.App. 1991).

As relevant here, § 13–90–101, C.R.S.2000, provides that:

> In every case the credibility of the witness may be drawn in question, as now provided by law, but the conviction of any person for any felony may be shown for the purpose of affecting the credibility of such witness.

A defendant who takes the stand becomes a witness within the meaning of § 13–90–101 and is therefore subject to examination concerning prior felony convictions. *People v. Evans,* 630 P.2d 94 (Colo. App.1981). But, the trial court has discretion to limit the extent of the examination into those convictions. *People v. Gallegos,* 950 P.2d 629 (Colo.App.1997).

Here, defendant asserts that the plain and ordinary meaning of the word "prior" is before and that under § 13–90–101 he cannot be impeached with felonies that occurred after the offense being tried. Defendant relies on *People v. District Court,* 187 Colo. 280, 284, 530 P.2d 958, 960 (1975), for the general proposition that:

> Due process and fundamental fairness are the considerations for determining whether or not there has been prejudice to the defendant of a type and kind that would require dismissal. No fixed rules exist,

and each case must be resolved on the particular facts which are before the court.

Initially, we observe that § 13–90–101 refers only to convictions, not to "prior" convictions. Admittedly, however, the term "prior conviction" has been used repeatedly in court decisions in connection with the statute. *See, e.g., People v. Thompson,* 182 Colo. 198, 511 P.2d 909 (1973); *People v. Gallegos,* 950 P.2d 629, 631 (Colo.App.1997)("Pursuant to § 13–90–101, evidence of a prior felony conviction is admissible to impeach the credibility of a witness.").

Although this is an issue of first impression in Colorado, other jurisdictions have held that impeachment of a defendant's testimony with a conviction for a felony that is committed after the subject crime is permissible. *See United States v. Gray,* 468 F.2d 257 (3d Cir.1972); *State v. Hernandez,* 191 Ariz. 553, 959 P.2d 810 (App.1998); *Commonwealth v. Zapata,* 455 Pa. 205, 314 A.2d 299 (1974); *State v. Eaton,* 24 Wash.App. 143, 600 P.2d 632 (1979)(the state may use a conviction for a crime committed after the one for which the defendant is being tried unless it is shown that the state altered the order of trials solely to obtain an impeaching conviction).

In allowing such impeachment evidence, the court in *Commonwealth v. Zapata, supra,* 314 A.2d at 302, reasoned that the "credibility of the witness [was] being attacked as of the time of the trial, not as of the time of the commission of the offense for which he is being tried." *But see Commonwealth v. McIntyre,* 417 Pa. 415, 208 A.2d 257 (1965)(impeachment with a defendant's prior conviction of a felony committed after the subject crime violated defendant's due process rights where prosecution intentionally tried defendant for less serious offense first so it could use conviction to impeach him in a murder prosecution if he testified).

We are persuaded by the reasoning of these courts and we similarly hold that under § 13–90–101, absent special circumstances not present here, a defendant may be impeached with felony convictions that occurred after the offense for which he or she is being tried.

## II.

Defendant next contends he was denied the effective assistance of counsel. We disagree.

Initially, we note that because the trial court has not had the opportunity to consider this claim in a Crim. P. 35(c) proceeding, our review on direct appeal is limited to whether ineffective assistance of counsel is established on the record before us. *See People v. Apodaca*, 998 P.2d 25 (Colo.App.1999).

■ Under the United States and Colorado Constitutions, defendants have a right to receive reasonably effective assistance from an attorney acting as a diligent and conscientious advocate. U.S. Const. amends, VI, XIV; Colo. Const. art. II, § 16.

■ To establish ineffective assistance of counsel, a defendant must show by a preponderance of the evidence that: (1) counsel's performance fell below the level of reasonably competent assistance; and (2) the deficient performance prejudiced the defense. *Davis v. People*, 871 P.2d 769 (Colo.1994).

■ There is a strong presumption that an attorney's conduct falls within the wide range of reasonably competent assistance. *People v. Drake*, 785 P.2d 1257 (Colo.1990).

■ To establish prejudice, the defendant must show a reasonable probability that, but for counsel's deficient performance, the outcome at trial would have been different. *Davis v. People, supra.* If a defendant fails to prove such prejudice, the court need not consider whether counsel's performance was deficient. *People v. Chambers*, 900 P.2d 1249 (Colo.App.1994).

### A.

■ Defendant contends he received ineffective assistance of counsel because his counsel failed adequately to prepare for trial or to ask for a continuance. We disagree.

On the morning of trial, defendant's counsel informed the court that defendant thought he was not receiving effective representation:

[Defendant] is frustrated that he is here today and has been forced to go to trial with what he thinks is inadequate time for him to prepare and consult with an attorney.

Given the fact that he is serving a Department of Corrections sentence, he has only been back in El Paso County for about a week, and I've only had the opportunity to meet with him twice since he has been back and I think that is inadequate.

He is being disallowed the right to present a defense and to be represented effectively.

Because defendant's counsel raised this issue, we reject defendant's contention that counsel's failure expressly to ask for a continuance fell below the level of reasonably competent assistance.

Defendant also asserts that his counsel was unprepared for trial, but he presents no record support for this assertion beyond the above-quoted excerpt. Our review of the record discloses that one day before trial, defendant's counsel informed the court that she was prepared for trial. The record also reflects that counsel presented several cogent pretrial arguments on defendant's behalf and provided a competent defense for him at trial.

Therefore, based on the record alone, we conclude that defendant has failed to show he was prejudiced by his counsel's alleged lack of preparation or that his counsel was unprepared for trial.

### B.

■ Defendant also contends he received ineffective assistance of counsel because his counsel failed to call an expert witness to testify. He maintains that this failure forced him to testify on his own behalf at trial. We are not persuaded.

■ Mere disagreement as to trial strategy will not support a claim for ineffective assistance of counsel. Whether to call particular witnesses is a tactical decision within the discretion of trial counsel. *Davis v. People, supra.*

■ Before a defendant testifies in a criminal proceeding, the court should inform

the defendant that: the defendant has the right to testify or not to testify; the decision to testify is personal; the prosecution would be able to cross-examine the defendant, and thus prior felony convictions could be disclosed to the jury; such prior felony convictions would be admitted for specific limited purposes; and there are certain other consequences of testifying. *People v. Curtis, supra.*

Here, defendant claims that counsel should have called an expert motorcycle driver to testify that it would have been impossible for defendant to look over his left shoulder while making a right turn. However, the tactical decision not to call such an expert witness was within the discretion of trial counsel and does not support defendant's claim of ineffective assistance of counsel. *See Davis v. People, supra.*

Nor does the record show that defendant was forced to testify. The trial court gave him a thorough *Curtis* advisement and engaged him in a lengthy dialogue about the disadvantages of testifying. The court explained that if he testified, the People would be able to impeach him with his three prior felony convictions. Defendant informed the court that he understood the decision whether to testify was his own, and that his counsel had advised him not to testify. The trial court expressly found that the People could impeach defendant with his prior felony convictions. In addition, the court gave a proper limiting instruction to the jury and used its discretion to prevent the People from asking defendant whether he served time in prison for his prior felony convictions.

Accordingly, we conclude defendant has failed to show that his counsel provided ineffective assistance.

### III.

 We also reject defendant's contention that the People's failure to preserve the motorcycle or to produce photographs of it violated his right to due process of law as embodied in Crim. P. 16.

Under Crim. P. 16(I), the prosecution must make available to the defense any photographs or tangible objects held as evidence in connection with the case. Crim. P. 16(I)(a)(2) also incorporates the holding of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), by requiring the prosecution to disclose to the defense any evidence within the prosecution's possession or control that tends to negate the guilt of the accused as to the offense charged, or tends to reduce the punishment therefor.

 Nevertheless, the prosecution's failure to comply with Crim. P. 16 is not reversible error unless the withheld evidence was material to guilt or punishment. Further, unless an accused can show bad faith on the part of the police, failure to preserve useful evidence does not constitute a due process deviation. *Arizona v. Youngblood,* 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988); *People v. Wyman,* 788 P.2d 1278 (Colo.1990).

 Exculpatory evidence includes evidence that bears on the credibility of a prosecution witness. *People v. District Court,* 793 P.2d 163 (Colo.1990). Evidence is material in this context:

> only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.

*United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 3380, 87 L.Ed.2d 481, 494 (1985); *People v. District Court,* 808 P.2d 831 (Colo.1991).

Here, there was no showing of bad faith by the police or the prosecution and the only disputed issue at trial was whether defendant knowingly eluded the officer. Defendant's counsel introduced a picture of the type of motorcycle involved in the chase and both the officer and defendant testified that the picture resembled the actual motorcycle driven by defendant.

However, defendant testified that in contrast to the pictured motorcycle, the actual motorcycle lacked rear-view mirrors and had a different exhaust pipe, which made the motorcycle louder. The People did not refute this testimony, and defense counsel emphasized these points during her closing

statement. Hence, the jury was aware of the alleged differences in the motorcycles.

Under these circumstances, we conclude there was no due process violation, and in any event, that the alleged Crim. P. 16 violation did not affect the result of the trial. Thus, reversal is not warranted on this basis.

Judgment affirmed.

TAUBMAN and ROY, Judges, concur.