22CA1974 Peo v Larkin 05-08-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 22CA1974
Arapahoe County District Court No. 12CR1664
Honorable Andrew C. Baum, Judge
Honorable Darren L. Vahle, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

David James Larkin,

Defendant-Appellant.

---

ORDER AFFIRMED

Division VII
Opinion by JUDGE LIPINSKY
Johnson and Moultrie, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 8, 2025

---

Philip J. Weiser, Attorney General, Patrick A. Withers, Senior Assistant
Attorney General, Denver, Colorado, for Plaintiff-Appellee

Robert P. Borquez, Alternate Defense Counsel, Denver, Colorado, for
Defendant-Appellant

¶ 1      David James Larkin appeals the denial of his petition for postconviction relief under Crim. P. 35(c).  We affirm.

## I.      Background

¶ 2      In August 2012, Larkin was charged with four counts of sexual assault on a child by one in a position of trust as part of a pattern of abuse, four counts of aggravated incest, and one count of indecent exposure based on allegations that he sexually assaulted his stepdaughter.

¶ 3      Larkin was tried twice on the charges.  Larkin's first trial, in February 2014, resulted in a hung jury.  During that trial, attorneys from the Public Defender's office represented Larkin.  After the first trial, Larkin retained private counsel, who represented him at his second trial in October 2014.  At the conclusion of his second trial, a jury found Larkin guilty as charged.

¶ 4      The court merged the aggravated incest convictions with their analogous sexual assault on a child convictions.  It then sentenced Larkin to an indeterminate sentence of sixteen years to life in the custody of the Department of Corrections, with twenty years to life of mandatory parole.  A division of this court affirmed Larkin's

convictions on direct appeal. *People v. Larkin*, (Colo. App. No. 15CA0213, Aug. 31, 2017) (not published pursuant to C.A.R. 35(e)).

¶ 5 In February 2019, Larkin filed a pro se petition under Crim. P. 35(c) asserting twenty-seven grounds for relief. The postconviction court grouped Larkin's twenty-seven claims into four categories:

1. Claims 1-16 alleged, in substance, constitutional violations arising from discovery violations or evidentiary errors.

2. Claims 17-23 alleged ineffective assistance of trial counsel and Claim 24 alleged ineffective assistance of direct-appeal counsel.

3. Claim 25 alleged cumulative error based on the above claims.

4. Claims 26-27 challenged Larkin's sentence.

¶ 6 The postconviction court concluded that Claims 1-16 were successive because they either were or could have been raised and resolved in Larkin's direct appeal. It denied those claims without a hearing. The court denied Claim 24 without a hearing because Larkin failed to allege facts sufficient to warrant a hearing. It denied Claims 26-27 without a hearing because Larkin's underlying

2

arguments were time barred and bare and conclusory, or they failed on the merits.

¶ 7     The postconviction court concluded that the remaining claims — Claims 17-23 and Claim 25 — were factually sufficient to warrant a hearing. The court reframed the issues, as it deemed necessary, and appointed postconviction counsel to represent Larkin at a hearing on the following claims:

- Claims 17-20 (consolidated): "[W]hether trial counsel was deficient, and prejudiced [Larkin], by: (1) failing to adequately investigate; (2) failing to adequately review discovery; (3) and failing to address *Brady* violations" (the failure to investigate claim).

- Claim 21: "[W]hether trial counsel was deficient, and prejudiced [Larkin], by: (1) failing to object to improperly admitted evidence; (2) failing to object to improper jury instructions; (3) failing to renew previously raised objections; and (4) failing to object to improper statements in the Prosecution's closing argument" (the failure to object claim).

- Claim 22: "[W]hether trial counsel was deficient, and prejudiced [Larkin], by failing to use an expert to: (1) rebut the [prosecution's] expert; (2) challenge the propriety of the investigation; and (3) challenge a witness's testimony based on that witness's substance abuse and sexual abuse" (the expert witness claim).

- Claim 23: "[W]hether trial counsel was deficient, and prejudiced [Larkin], by: (1) failing to meet with [him]; (2) failing to disclose to [him] prior to trial that the prosecution told trial counsel [his] allegations were untrue; (3) failing to disclose to [him] prior to trial that the prosecution misrepresented facts to trial counsel; (4) failing to disclose to [him] prior to trial that trial counsel lacked access to discovery; and (5) failing to disclose to [him] that new discovery had been provided" (the failure to communicate claim).

- Claim 25: "[W]hether [Larkin's] right to due process was violated based on the accumulation of those errors" (the cumulative error claim).

Alternate defense counsel (ADC) entered an appearance to represent Larkin.

¶ 8    ADC filed a supplemental petition for postconviction relief, asserting legal arguments regarding the reframed claims. In addition, ADC asserted two claims regarding plea bargaining that Larkin did not include in his pro se petition.

¶ 9    The postconviction court granted a hearing on the supplemental petition. At the hearing, ADC focused on the failure to investigate claim, the expert witness claim, the failure to communicate claim, and those claims' cumulative effect. ADC withdrew the failure to object and the plea bargaining claims.

¶ 10    At the conclusion of the testimony, ADC argued that private counsel provided constitutionally deficient representation by failing to adequately demonstrate to the jury that the criminal investigation into Larkin was flawed. ADC theorized that Larkin was prejudiced because, if private counsel "had presented all of the deficiencies in this case and argued [about] the sum of the shoddy investigation," it might have instilled reasonable doubt in the jury. ADC conceded that private counsel made the investigation a central theme at trial but argued that counsel's failure to follow up on

discovery, read a critical pretrial transcript, or call a witness to testify about the investigation prevented private counsel from proving the theory with evidence. The postconviction court entered an oral ruling denying the petition.

¶ 11 Larkin asserts four arguments on appeal. First, Larkin contends that the postconviction court "misapprehended" the expert witness claim. Second, Larkin argues that the court erred by concluding that a portion of the failure to investigate claim did not prejudice Larkin. Third, Larkin asserts that these errors cumulatively prejudiced him. Fourth, Larkin argues that the postconviction court erred by denying Claims 1-3 without a hearing on the grounds that they were successive. We address and reject each argument in turn.

## II. Ineffective Assistance of Counsel

### A. Applicable Law and Standard of Review

¶ 12 A convicted defendant may collaterally attack a conviction on the ground that, as relevant here, the defendant's counsel provided constitutionally deficient representation. *See* Crim. P. 35(c)(2)(I). Because we presume a conviction is valid, the defendant bears the burden of proving entitlement to postconviction relief. *Dunlap v.*

*People*, 173 P.3d 1054, 1061 (Colo. 2007). Postconviction proceedings are "intended to prevent injustices after conviction and sentencing, not to provide perpetual review." *People v. Rodriguez*, 914 P.2d 230, 249 (Colo. 1996).

¶ 13 A court must conduct an evidentiary hearing on a Crim. P. 35(c) petition when a defendant alleges facts that, if true, may warrant relief. *People v. Chalchi-Sevilla*, 2019 COA 75, ¶ 7, 454 P.3d 359, 361. To sufficiently allege a claim of ineffective assistance of counsel, a defendant must show that (1) his attorney's performance was deficient and (2) the deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *Dunlap*, 173 P.3d at 1062.

¶ 14 In general, we presume that counsel's conduct fell within the wide range of reasonable professional assistance and sound trial strategy. *Rodriguez*, 914 P.2d at 294. But an attorney's performance is deficient if it falls "below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. A postconviction court may not rely on "the distorting effects of hindsight" and must "evaluate the conduct from counsel's perspective at the time."

7

*Rodriguez*, 914 P.2d at 294 (quoting *Strickland*, 466 U.S. at 689); *see also People v. Gandiaga*, 70 P.3d 523, 525 (Colo. App. 2002).

¶ 15     To prove prejudice, the defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In other words, the defendant must show "a probability sufficient to undermine confidence in the outcome." *Id.*; *see Ardolino v. People*, 69 P.3d 73, 76 (Colo. 2003).

¶ 16     If a postconviction court determines that a defendant failed to prove either prong of the *Strickland* test, it may deny the ineffective assistance claim on that ground without addressing the other prong. *Strickland*, 466 U.S. at 697; *People v. Luong*, 2016 COA 13M, ¶ 9, 378 P.3d 843, 847-48.

¶ 17     We review the postconviction court's resolution of an ineffective assistance of counsel claim after a hearing as a mixed question of fact and law. *See People v. Wardell*, 2020 COA 47, ¶ 27, 474 P.3d 154, 160. We defer to the court's factual findings if they are supported by the record but review de novo the court's ultimate conclusions. *Dunlap*, 173 P.3d at 1063. "Where the evidence in the record supports the findings and holding of the postconviction court

8

that presided over an evidentiary hearing, the judgment will not be disturbed on review." *Wardell*, ¶ 27, 474 P.3d at 160.

### B.    The Expert Witness Claim

#### 1.    Additional Background

¶ 18    In the supplemental petition, ADC highlighted several deficiencies in the investigator's performance during the criminal investigation, including his failure to (1) record the initial interview with the alleged victim; (2) collect digital evidence; (3) obtain the alleged victim's complete diary; and (4) interview the alleged victim's brother.  ADC argued that private counsel "should have retained an expert in the area of law enforcement investigation" to establish that the investigator's conduct "was in violation of commonly accepted procedures."  ADC reasoned that such testimony would have had "a powerful effect" on the jury and that counsel's "failure to at least consult with an expert on these issues" constituted ineffective assistance.

¶ 19    At the hearing, Larkin presented the testimony of a law enforcement investigation expert who discredited the investigator's actions on the above grounds, among others.  Larkin also presented the testimony of a criminal practice standards expert, who opined,

as relevant here, that private counsel should have presented to the jury more information about the deficiencies of the investigation and that an expert witness would have been helpful in establishing why certain practices were inadequate.

¶ 20 Private counsel testified that he did not consider using law enforcement investigation experts because their pretrial disclosures generally give the prosecution an opportunity to fill holes in the investigation ahead of trial. He testified that using such experts requires that defense attorneys "tip [their] hand" to the prosecution before trial instead of playing that hand for the first time in front of the jury.

¶ 21 After hearing argument, the postconviction court found that private counsel adequately attacked the investigation at trial. The court also found that private counsel "considered the issue" and "understands the nature of these types of experts" — including when they may or may not be helpful to a case. The court found that private counsel decided, as a matter of strategy, that using such an expert was not a "wise use of his client's money." The court went on to conclude that, even if deficient performance, the failure to call the expert did not prejudice Larkin because his trial

was largely a credibility battle and an expert's testimony on the nature of the investigation would not have changed that.

### 2. Private Counsel's Failure to Consult with an Expert Witness Was Not Deficient

¶ 22    On appeal, Larkin asserts that the postconviction court "ignored the allegation that [private counsel] should have *consulted* with a police investigative practices expert and addressed only the issue of whether [private counsel] should have *called* such an expert to testify."  We are unpersuaded.

¶ 23    The postconviction court found that private counsel understood the risks and potential benefits of working with law enforcement investigation experts.  The record supports that finding.  Private counsel testified that consulting with a law enforcement investigation expert in this case would have been strategically unwise and an imprudent use of his client's limited funds.  Whether Larkin's criminal practice standards expert agreed with private counsel's chosen strategy is beside the point.  The decision to call a particular witness is "within the discretion of trial counsel," and "[m]ere disagreement" with that strategy "will not support a claim for ineffective assistance of counsel."  *People v.*

11

*Bradley*, 25 P.3d 1271, 1275 (Colo. App. 2001). "To establish ineffective assistance, the defendant was required to overcome the presumption that, under the circumstances, the challenged conduct of his counsel might be considered sound trial strategy." *Ardolino*, 69 P.3d at 78.

¶ 24 Larkin further attacks private counsel's decision not to engage a law enforcement investigation expert for financial reasons. Larkin argues that, if private counsel "needed more money," he was "ethically obligated to ask his client for more money." This argument, too, misses the mark because private counsel testified that, in his assessment, consulting with and calling a law enforcement investigation expert would not have been a wise use of his client's funds, not that his client lacked the funds to engage such an expert. Thus, Larkin cannot overcome the presumption that private counsel's choice not to consult with an expert witness, whom private counsel had the discretion to call, *see Bradley*, 25 P.3d at 1275, was a matter of trial strategy — a requirement to establish deficient performance. *See Ardolino*, 69 P.3d at 78.

¶ 25 For these reasons, we agree with the postconviction court's conclusion on the expert witness claim.

## C. The Failure to Investigate Claim

### 1. Additional Background

¶ 26 The prosecution did not call the investigator to testify during its case-in-chief in either the first or the second trial. Thus, private counsel had to decide whether to call him as a defense witness to establish deficiencies in the investigation. Although private counsel subpoenaed the investigator at the second trial, counsel ultimately decided not to call him to testify.

¶ 27 In the supplemental petition, ADC alleged that private counsel failed to review a transcript of a 2013 motions hearing in which the investigator testified. ADC alleged that reviewing the transcript would have been "instrumental" in private counsel's decision whether to call the investigator to testify and "critical to adequate preparation for cross-examination."

¶ 28 Private counsel testified that he did not want to risk calling the investigator because he did not know what the investigator would say, and doing so would give the prosecution the opportunity to ask him leading questions on cross-examination. Private counsel testified that he believed he successfully impeached the alleged victim throughout trial — a task that the postconviction court

13

identified as paramount in a case like Larkin's — and that the investigator's testimony was "not the kind of evidence that I would want at the end of my case." Private counsel admitted, however, that he had no recollection of reading the transcript of the investigator's former testimony before deciding whether to call him as a witness at trial.

¶ 29 The postconviction court found that private counsel indeed failed to review the transcript, but that any error in failing to read the transcript did not prejudice Larkin because his and the alleged victim's credibility were more critical to the case than was the inadequacy of the investigation.

### 2. Counsel's Failure to Review the Transcript Did Not Prejudice Larkin

¶ 30 In our view, it is a close question whether private counsel's failure to read a potentially key witness's pretrial testimony before deciding whether to call him as a witness constitutes deficient performance. Private counsel asserted credible reasons for not calling the investigator — a matter usually left to trial counsel's sound discretion. *See Bradley*, 25 P.3d at 1275. But his failure to review the transcript calls into question whether he had sufficient

information to make such a decision. Thus, we assume, without deciding, that counsel's performance was deficient and turn to the prejudice prong of the *Strickland* test. *See Luong*, ¶ 9, 378 P.3d at 847-48.

¶ 31     We conclude that Larkin was not prejudiced by private counsel's failure to review the transcript and decision not to call the investigator to testify. As the merits appeal division astutely observed in considering whether Larkin should have been provided with the investigator's personnel file,

> Even if the files had been disclosed and also revealed that the [investigator] was untruthful in investigating Larkin's case, that evidence would not have changed the outcome of the trial; the victim's testimony, which had nothing to do with the [investigator], was strong evidence of Larkin's guilt. And we fail to see how, after reviewing the files, it would have benefited Larkin to call the [investigator] as a witness, have him give inculpatory testimony, and then impeach him. Although the [investigator]'s credibility would have suffered, the jury's consideration of the credibility of the victim's testimony and other evidence of Larkin's guilt would have been unaffected.

*Larkin*, No. 15CA0213, slip op. at 17.

¶ 32     The postconviction court similarly reasoned,

15

[I]n this case, the lack of investigation, the nature of what happened and what didn't happen was in front of the jury, it was argued to the jury, the jury had it to consider. . . . But the kinds of cases that have very detailed investigative processes, specifically evidence collection processes, evidence preservation processes, testing of evidence, DNA testing, fingerprint testing, all those kinds of things, the Court finds are somewhat more fruitful when we're talking about investigative failures because those cases very frequently come down to very minute facts, which are found out by the police and presented to a jury. This is a different type of case. And these types of cases . . . are credibility matters. This case came down to the credibility of [the alleged victim].

¶ 33    We agree with the reasoning of each court. Even if private counsel had introduced every detail of the faulty investigation and supported them with exhibits, such evidence would not have changed the fact that the alleged victim testified against Larkin at trial. At no point did private counsel, direct appeal counsel, or postconviction counsel allege that the investigator coached or pressured the victim to testify a certain way such that her testimony was unreliable.

¶ 34    Private counsel's primary task at trial was to undermine the alleged victim's credibility. The record demonstrates that private

16

counsel understood that. So even if the prosecutor's failure to call the investigator should have been a "red flag" for private counsel, the extent to which private counsel challenged the integrity of the underlying criminal investigation was peripheral to the primary question the jurors were tasked with deciding: whether they believed the alleged victim.

¶ 35 Thus, neither this alleged error nor the cumulative effect of every error that Larkin alleged in his opening brief prejudiced him such that postconviction relief is warranted.

### III. Summary Denial of Pro Se Claims

¶ 36 Larkin lastly contends that the postconviction court erred by summarily denying Claims 1-3 in his pro se petition because they were successive. In those claims, Larkin asserted that

1. he "was denied due process when the prosecution suppressed evidence favorable to the defense by failing to provide the defense with complete copies of witness statements in the State's possession";

2. he "was denied due process when the prosecution [s]uppressed [e]vidence by failing to provide the [d]efense with copies of emails from [the investigator] to [w]itnesses

17

as requested in [d]efense [m]otion for [p]reservation and [p]roduction January 14, 2013"; and

3.    his "right to due process, effective assistance of counsel, an impartial jury and to confront witnesses against him . . . were violated when [the investigator] . . . corrupted progress reports and other documents with false statements resulting in a defective and biased investigation, making it impossible for Defense to know the true contents of interviews or true perceptions of [w]itnesses.  As well as offering false testimony during motions hearing further obstructing defendant's ability to discover exculpatory and material evidence."

¶ 37    Larkin claims that, because his third ground — which incorporated the first two grounds — included the term "ineffective assistance of counsel," the postconviction court should have considered the claim instead of denying it because Larkin could not have raised it in his direct appeal.

¶ 38    Even if we assume that Larkin sufficiently brought this contention to the postconviction court's attention, we conclude that any error was harmless.  ADC spent substantial time developing

evidence of the discovery dispute implicated in Claims 1-3 during the postconviction hearing as support for his outstanding ineffective assistance claims. The court denied any claim associated with the discovery issue at the end of the hearing. Thus, regardless of whether the court rejected Claims 1-3 without a hearing, it considered and denied the same repackaged argument in the context of the ineffective assistance of counsel claims addressed during the hearing.

## IV.    Disposition

¶ 39     The order is affirmed.

JUDGE JOHNSON and JUDGE MOULTRIE concur.