24CA0019 Peo v Cockrell 10-02-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA0019
El Paso County District Court No. 13CR2514
Honorable R. Michael Mullins, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Brandon Cockrell,

Defendant-Appellant.

---

ORDER AFFIRMED

Division II
Opinion by JUDGE FOX
Brown and Meirink, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced October 2, 2025

---

Philip J. Weiser, Attorney General, Jillian J. Price, Deputy Attorney General, Denver, Colorado, for Plaintiff-Appellee

Suzan Trinh Almony, Alternate Defense Counsel, Broomfield, Colorado, for Defendant-Appellant

¶ 1    Defendant, Brandon Cockrell, appeals the postconviction court's order denying his Crim. P. 35(c) motion for postconviction relief after an evidentiary hearing.  We affirm.

## I.    Background

¶ 2    The victim in this case was shot multiple times and left on a trail outside of Colorado Springs, where bystanders discovered him and called 911.  En route to the hospital, the victim said that Cockrell had shot him.  The victim died after arriving at the hospital.  Cockrell was arrested and charged with first degree murder.

¶ 3    At trial, the prosecution presented evidence of (1) the victim's identification of Cockrell; (2) eyewitness reports of a white Cadillac matching the description of one owned by Cockrell speeding away from the scene; and (3) cell phone data indicating that Cockrell's cell phone was near the shooting.  The victim and Cockrell had injuries consistent with a physical altercation, so the prosecution theorized that the victim and Cockrell were in a fight that ended with Cockrell shooting the victim.  But the prosecution did not present any forensic evidence tying Cockrell to the murder.

1

¶ 4     Cockrell was represented by two attorneys from the public defender's office.  The attorneys endorsed a general denial defense, and at trial they attempted to cast doubt on the victim's identification of Cockrell and the cell phone data's reliability.  They also highlighted the lack of forensic evidence and argued that law enforcement officers did not perform an adequate investigation.  As for Cockrell's injuries, they offered that Cockrell was a boxer and sustained those injuries in the ring rather than a fight with the victim.

¶ 5     The jury found Cockrell guilty of first degree murder.  The district court sentenced him to life in prison without the possibility of parole.

¶ 6     Cockrell appealed the judgment of conviction, asserting that (1) the dying declaration statute was unconstitutional; (2) the trial court erred by admitting evidence of the victim's dying declaration; and (3) the evidence was insufficient to sustain the jury's verdict.  *See People v. Cockrell*, 2017 COA 125, ¶¶ 8, 19, 30.  A division of this court rejected Cockrell's arguments and affirmed the judgment of conviction.  *See id.* at ¶¶ 18, 29, 33-34.

¶ 7    Cockrell then filed a pro se Crim. P. 35(c) motion for postconviction relief, alleging that his attorneys were ineffective. After reviewing Cockrell's claims, the postconviction court appointed counsel, who supplemented Cockrell's pro se motion, asserting that his trial attorneys were ineffective by failing to (1) investigate witnesses and present evidence; (2) consult with and present an expert witness; and (3) develop a cohesive theory of defense.

¶ 8    After considering Cockrell's motion and supplement and the People's response, the postconviction court set the matter for an evidentiary hearing.  At the hearing, Cockrell presented testimony that he had been in a fight two days before the murder and that he had a close relationship with the victim.  The court also heard testimony from only one of Cockrell's trial attorneys.  Finally, Cockrell presented testimony from an expert in gunshot residue (GSR) evidence and a criminal defense expert.  In a written order following the hearing, the postconviction court rejected Cockrell's ineffective assistance claims and denied his motion.

## II. Discussion

¶ 9    Cockrell contends that, contrary to the postconviction court's findings, the evidence at the postconviction hearing established that his attorneys provided ineffective assistance by failing to (1) adequately investigate and call witnesses in his defense; (2) consult with or retain an expert witness in GSR; and (3) present an alternate suspect defense. We address and reject each of these contentions below.

### A. Applicable Law and Standard of Review

¶ 10    "A criminal defendant is constitutionally entitled to effective assistance from his counsel." *Ardolino v. People*, 69 P.3d 73, 76 (Colo. 2003). To succeed on an ineffective assistance claim, the defendant must establish that (1) counsel's performance was deficient, meaning it fell below an objective standard of reasonableness; and (2) counsel's deficient performance prejudiced the defendant, meaning that a reasonable probability exists that, but for counsel's deficient performance, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *Dunlap v. People*, 173 P.3d 1054, 1062-63 (Colo. 2007). A postconviction court may reject an ineffective assistance

4

claim if the defendant fails to demonstrate either deficient performance or prejudice. *See People v. Aguilar*, 2012 COA 181, ¶ 9.

¶ 11 The denial of a Crim. P. 35(c) motion after a hearing is a mixed question of fact and law. *People v. Corson*, 2016 CO 33, ¶ 25. We defer to the postconviction court's factual findings but review de novo the court's ultimate conclusions regarding performance and prejudice. *See People v. Sharp*, 2019 COA 133, ¶ 12. The postconviction court determines the weight and credibility to be given to the testimony of witnesses in a Crim. P. 35(c) hearing. *People v. Hardin*, 2016 COA 175, ¶ 39. Accordingly, "[w]here the evidence in the record supports the findings and holding of the postconviction court that presided over an evidentiary hearing, the judgment will not be disturbed on review." *People v. Wardell*, 2020 COA 47, ¶ 27.

### B. Investigate and Call Witnesses

¶ 12 Cockrell asserts that his attorneys failed to adequately investigate witnesses and present evidence in his favor. Specifically, Cockrell asserts that, because his counsel did not adequately investigate the case, they did not present evidence that

(1) he sustained the injuries in a fight two days before the murder, and (2) he and the victim had a close relationship. We disagree.

¶ 13 Criminal defendants are entitled to sufficiently thorough pretrial investigations "to develop potential defenses and uncover facts relevant to guilt and punishment." *People v. Davis*, 849 P.2d 857, 861 (Colo. App. 1992), *aff'd*, 871 P.2d 769 (Colo. 1994); *see Davis*, 871 P.2d at 773 ("[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."). When reviewing a claim of ineffective assistance, the court must evaluate counsel's alleged failure to investigate for reasonableness, "applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691. Mere disagreement as to trial strategy will not support an ineffective assistance claim. *Davis*, 849 P.2d at 861; *People v. Apodaca*, 998 P.2d 25, 29 (Colo. App. 1999).

### 1.    Injuries from a Fight

¶ 14 Cockrell contends that his attorneys were ineffective for failing to investigate his claim that his injuries were the result of a fight that occurred two days before the murder and call witnesses to testify about the fight and injuries. We disagree.

6

¶ 15     At the evidentiary hearing, one of Cockrell's acquaintances testified that she attended Cockrell's birthday party two days before the murder.  She said that Cockrell and another man at the party got into a fight after the other man "came from behind and hit [Cockrell] in the head with a bottle."  The witness testified that the fight was "pretty intense" and that Cockrell suffered injuries to his face and hands.  The witness said that Cockrell's attorneys visited her, they asked her about the fight, and she told them the "exact story" she testified to at the evidentiary hearing.

¶ 16     Cockrell's attorney testified that he recalled talking to Cockrell about "what the source of those injuries might have been."  He also recalled that "Mr. Cockrell went to a boxing gym, and that that may have actually been the explanation for some of those injuries."  When asked whether he remembered any discussions about a fight that had occurred before the murder, he said that he did not "have a very firm recollection," but "it sounded very familiar."  When confronted with information that the defense case file did not mention the fight, the attorney expressed surprise because he remembered discussing the issue with his co-counsel.

¶ 17    The criminal defense expert testified that it was "crucially important" for the defense to explain the source of Cockrell's injuries because "it was . . . the only other physical evidence that [the prosecution] had that Mr. Cockrell had been involved in an altercation with the victim." The expert believed that the boxing angle was "fairly weak," and the attorneys were therefore ineffective for failing to investigate the earlier fight and present evidence of that fight to explain Cockrell's injuries.

¶ 18    The postconviction court rejected this assertion, finding that, although the defense case file did not include notes about the fight, the evidence established that defense counsel knew about it but "chose not to proceed with" it. The court also determined that, even if Cockrell's attorneys' decision to present the boxing angle to the jury was a "weak explanation," it was a strategic decision that was not objectively unreasonable.

¶ 19    We agree with the postconviction court that Cockrell did not establish that his attorneys provided deficient performance by not investigating the fight or presenting it to explain his injuries. Although Cockrell named at least four witnesses who could have testified about the fight or his injuries, only one of those potential

witnesses testified at the evidentiary hearing. *See People v. Chambers*, 900 P.2d 1249, 1252 (Colo. App. 1994) (when a defendant alleges that counsel failed to investigate, he must produce evidence of potential witnesses and their willingness to testify). That witness said that Cockrell's attorneys spoke with the witness before the trial and that she told them about the fight. And although Cockrell's attorney could not remember much, he recalled speaking to Cockrell and his co-counsel about the injuries and the source of those injuries. Therefore, the record supports the court's finding that Cockrell's attorneys adequately investigated the fight. *See People v. Newmiller*, 2014 COA 84, ¶ 45 (noting that counsel's only duty is to conduct a reasonable investigation that is sufficient to reveal potential defenses and facts related to guilt).

¶ 20    Having investigated the claim, the attorneys presumably made a strategic decision to explain the injuries by telling the jury that Cockrell was a boxer. *See Arko v. People*, 183 P.3d 555, 558 (Colo. 2008) (decisions about what witness to call are reserved to defense counsel). And even if this explanation was relatively weak, as the criminal expert opined, we agree with the postconviction court that it was not objectively unreasonable, considering that the other

theory would have required the defense to admit evidence of Cockrell's violent acts and rely on testimony from a witness with a criminal history. *See Newmiller*, ¶ 48; *Davis*, 849 P.2d at 861.

### 2. Close Relationship with the Victim

¶ 21    Cockrell argues that his attorneys were ineffective by failing to investigate and call witnesses to testify about his close relationship with the victim. We disagree.

¶ 22    At the evidentiary hearing, the postconviction court heard testimony from one of Cockrell's friends and Cockrell's ex-wife. They testified that Cockrell and the victim had a close relationship and that Cockrell was like a "big brother figure" to the victim. Both witnesses admitted that they had spoken to Cockrell's attorneys before the trial. Cockrell's attorney said that he remembered discussing with Cockrell the nature of the relationship with the victim, but he did not "have any real specific independent recollection of" the investigation into the relationship.

¶ 23    The criminal defense expert opined that, although the attorneys were aware of the relationship between Cockrell and the victim, they did not do enough to investigate it. However, the expert admitted that presenting evidence to the jury that Cockrell and the

victim were close was potentially a "double-edged sword." Therefore, she said that she was "not positive" that the evidence about Cockrell's relationship was critical to Cockrell's case.

¶ 24 The postconviction court found that presenting evidence of Cockrell's relationship with the victim was a "double-edged sword," as the criminal defense expert testified. Specifically, the court noted that the evidence could have given "substantial support" to the victim's identification of Cockrell as the shooter and "undercut" his defense that the victim had misidentified him. The court therefore concluded that it was not objectively unreasonable for the attorneys to avoid presenting evidence of the relationship.

¶ 25 Again, we agree with the postconviction court that Cockrell did not establish that his attorneys provided deficient performance. The record shows that the attorneys knew about the relationship between Cockrell and the victim and that they interviewed the witnesses with information about their relationship. Because the strongest evidence against Cockrell was the victim's identification, it was reasonable for his attorneys to avoid anything that would add weight to that identification, such as evidence that the victim was

very familiar with Cockrell.  Therefore, based on these facts, we reject Cockrell's assertion.  *See Newmiller*, ¶ 48.

## C.    GSR Expert Witness

¶ 26    Cockrell maintains that his attorneys were ineffective for failing to consult with and obtain an expert witness in GSR.  We disagree.

¶ 27    Trial counsel has a duty to make reasonable investigations, including consulting experts that could help rebut or severely undermine the prosecution's evidence.  *See id.* at ¶¶ 45, 51.  But counsel need not introduce expert testimony if the attorney can effectively cross-examine prosecution witnesses and elicit helpful testimony.  *Id.* at ¶ 60.  Therefore, reviewing courts should afford deference to trial counsel's decisions about whether to call expert witnesses.  *People v. Bradley*, 25 P.3d 1271, 1276 (Colo. App. 2001).

¶ 28    At trial, the prosecution presented evidence that law enforcement had collected samples from Cockrell's hands and face, as well as his vehicle, to test for GSR.  Yet law enforcement did not submit these samples for testing, and the prosecution therefore did not have any evidence that Cockrell had fired a gun.  The defense

pointed to the lack of GSR testing as evidence of law enforcement's shoddy investigation.

¶ 29     In his Crim. P. 35(c) motion, Cockrell asserted that his attorneys needed to consult with and call a GSR expert witness to rebut the prosecution's assertion that GSR testing was "not very relevant or important" in this case.  In support, Cockrell presented testimony from a GSR expert, who explained the mechanics and collection of GSR, including the best sources where gunshot residue might be found on a shooter.  He also explained that if a person had fired a gun multiple times, that person would likely have GSR on their hands and clothes, which could then be transferred to surfaces that they touched.  The criminal defense expert then testified that Cockrell's attorneys were ineffective for failing to present expert testimony to explain to the jury how significant it was that the prosecution did not have any GSR evidence, given the circumstances of this case.

¶ 30     The postconviction court determined that, although Cockrell's attorneys had not presented a GSR expert, they cross-examined the prosecution's witnesses and elicited testimony that supported their theory of the case.  *See Newmiller*, ¶ 60.  The court concluded that

"even if [Cockrell's] method of proof would have been better," he had not shown that "the method and strategy used by [his attorneys] fell below the level of reasonably competent assistance demanded of attorneys in criminal cases."

¶ 31     To begin with, Cockrell did not present any evidence that his attorneys were unfamiliar with GSR evidence and that they needed to consult with an expert witness to properly understand the evidence or cross-examine the prosecution's witnesses on this issue.  Rather, as described in more detail below, the attorneys demonstrated that they knew about the general mechanics of GSR and used cross-examination to attack law enforcement's lack of investigation into GSR evidence.

¶ 32     The record indicates that Cockrell's attorneys elicited the same or similar information from the prosecution's witnesses that Cockrell wanted presented by an expert witness:

- Mechanics: One of the officers trained to collect GSR evidence testified that it was "standard practice" to collect GSR evidence in a shooting investigation.  He said that the presence of GSR can indicate whether someone

fired a gun and that when someone does, the most likely place to find GSR is on the hands and face.

- Collection: A crime scene investigator (CSI) testified that GSR is collected using "stubs," which have an adhesive side that is applied to a surface. He said that the stubs are then logged into the evidence locker at the police department. A detective testified that the test kits are sent to the Colorado Bureau of Investigation for testing.

- Transfer: A different CSI testified that GSR can be transferred from one place to another and even though there is a chance it can be cleaned off, law enforcement still tries to collect samples. A third CSI testified that GSR is "very mobile" and noted that a gunshot victim could potentially transfer GSR onto surfaces of the ambulance he is transported in.

¶ 33     Using this evidence, Cockrell's attorneys argued that, if Cockrell had shot the victim as the prosecution theorized, it would be surprising not to find GSR on him or his vehicle. Cockrell's GSR expert reviewed the testimony from the trial and could not identify specific inaccuracies in the testimony.

¶ 34　　In sum, because the record supports the postconviction court's finding that Cockrell's attorneys did not perform deficiently under the circumstances presented here, we discern no error in the court's decision to reject Cockrell's claim. *See Bradley*, 25 P.3d at 1276 (counsel's decision to not call an expert motorcycle driver was a tactical decision and therefore the defendant had not established his ineffective assistance claim).

¶ 35　　Finally, Cockrell asserts that his attorneys were ineffective for failing to object to the coroner's brief testimony about GSR because the testimony was outside the scope of the witness's expertise. The coroner testified that the standard practice among forensic pathologists was to not collect GSR because the victim will have been handled by so many people and therefore produce a false negative. We agree with the People that the examiner's testimony was within the scope of his expertise, and therefore counsel's failure to object did not fall below the level of reasonably competent assistance. Cockrell otherwise fails to direct us to any authority for his position or fully develop his argument. *See People v. Bossert,* 722 P.2d 998, 1010 (Colo. 1986) ("Effective assistance of counsel . . . does not require an attorney to object to every possible

error."); *see also People v. Sparks*, 914 P.2d 544, 548 (Colo. App. 1996) (counsel did not object to inadmissible character evidence because "he did not want to draw undue attention to these indirect references").

¶ 36    In any event, the forensic examiner's testimony related to why GSR evidence is not particularly useful with respect to a shooting victim, not a potential shooter.  In other words, the examiner's testimony did not necessarily undermine the defense's position that, if Cockrell were the shooter, the prosecution would have found GSR on him or in his car.  Under these circumstances, Cockrell has not established that, even if his attorneys were deficient for failing to object, he was prejudiced by this testimony.

### D.    Alternate Suspect Defense

¶ 37    Cockrell submits that his attorneys were ineffective by failing to present a cohesive theory of defense and should have instead presented an alternate suspect defense.  We disagree.

¶ 38    In his Crim. P. 35(c) motion, Cockrell asserted that the victim and a mutual friend were involved in an altercation with two individuals at the bus station.  He claimed that one of the individuals involved threatened to kill the victim.  Cockrell argued

17

that his attorneys failed to investigate this incident and to call the friend as a witness to support an alternate suspect defense.

¶ 39    At the postconviction hearing, Cockrell testified that he asked counsel to investigate the incident at the bus terminal. Cockrell's friend testified that Cockrell's counsel and an investigator visited him in prison, and he told them about the incident. Specifically, the friend said that he and the victim "got into it" with a couple of "dudes" at the bus station and one "dude started telling [him] how they was gonna, you know, kill [him and the victim]." Cockrell did not present any evidence establishing the identity of the individuals involved in the alleged incident. Nor did he ask trial counsel any questions about whether the defense investigated this claim.

¶ 40    Based on this record, the postconviction court rejected Cockrell's claim, finding that his "argument [was] not supported by the record" and that his attorneys were "consistent and focused on presenting and developing evidence in support of their theory of defense."

¶ 41    We agree with the postconviction court that Cockrell did not establish that his attorneys provided deficient performance by not investigating an alternate suspect defense or presenting that

defense at trial. The record shows that Cockrell's attorneys talked to the friend about the incident and decided not to pursue that theory at trial. And considering that the friend only had a vague description of the alleged assailants, we are skeptical as to whether an alternate suspect defense was a viable option. *See People v. Elmarr*, 2015 CO 53, ¶ 23 (noting that, to present an alternate suspect defense, the evidence must establish "a non-speculative connection or nexus between the alternate suspect and the crime charged"). Thus, because the record shows that the attorneys investigated the alternate suspect theory, it was not deficient performance — under the circumstances presented here — for Cockrell's attorneys to pursue a general denial defense. *Steward v. People*, 498 P.2d 933, 934 (Colo. 1972) (defense counsel is the "captain of the ship" on matters of strategy, including the theory of defense); *see Ardolino*, 69 P.3d at 76 (noting that "[s]trategic choices made after thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable").

## E. Abandoned Claims

¶ 42    Any claims that Cockrell raised in his postconviction motion and supplement but did not reassert in this appeal are abandoned. *See People v. Osorio,* 170 P.3d 796, 801 (Colo. App. 2007).

## III. Disposition

¶ 43    The order is affirmed.

JUDGE BROWN and JUDGE MEIRINK concur.